**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| KIM SNYDER, on behalf of herself and all others similarly situated, | Civil No. 21-1049 (JRT/BRT) |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNITEDHEALTH GROUP, INC., BOARD OF DIRECTORS OF UNITEDHEALTH GROUP, INC., DAVID S. WINCHMANN, UNITEDHEALTH GROUP EMPLOYEE BENEFITS PLANS INVESTEMENT COMMITTEE, UNITEDHEALTH GROUP EMPLOYEE BENEFITS PLANS ADMINISTRATIVE COMMITTEE, DOES 1–30, | |
| Defendants. | |

---

Alexandra Harwin, **SANFORD HEISLER SHARP**, 1350 Avenue of the Americas, 31st Floor, New York, NY 10019; Charles Henry Field, Jr., **SANFORD HEISLER SHARP**, 2550 Fifth Avenue, 11th Floor, San Diego, CA 92103; David Sanford and R. Johan Conrad Jr., **SANFORD HEISLER SHARP**, 700 Pennsylvania Avenue Southeast, Suite 300, Washington DC 20003; Kevin H. Sharp and Leigh Anne, **SANFORD HEISLER SHARP,** St. Charles, 611 Commerce Street, Suite 3100, Nashville, TN 37203; Susan M. Coler, **HALUNEN LAW**, 80 South Eighth Street, Minneapolis, MN 55402, for plaintiff.

Brian D. Boyle and Meghan McLane VerGow, **O'MELVENY & MYERS LLP**, 1625 Eye Street Northwest, Washington DC 20006; Debora A. Ellingboe and Isaac B. Hall, **FAEGRE DRINKER BIDDLE REATH LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for defendants.

Plaintiff Kim Snyder brought this class action on behalf of herself and all other similarly situated participants and beneficiaries of UnitedHealth Group, Inc.'s ("UnitedHealth") 401(k) Savings Plans (the "Plan"). Snyder brings this action for breach of fiduciary duties under ERISA against Defendants UnitedHealth, its Board of Directors and its members, David S. Winchmann, the UnitedHealth Group Employee Benefits Plans Investment Committee and its members, and the UnitedHealth Group Employee Benefits Plans Administrative Committee and its members (collectively "Defendants"). Snyder alleges that Defendants breached their duty of prudence and duty to monitor the performance of individuals to whom they delegated fiduciary responsibilities. Defendants have brought a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. Because Snyder has plausibly pled imprudence by identifying several meaningful benchmarks and demonstrating that the Wells Fargo Target Date Funds (the "Wells Fargo TDFs") chronically underperformed each of these benchmarks over the course of eleven years, the Court will deny Defendants' Motion to Dismiss. As discovery has not yet begun, the Court will deny Defendants' Motion for Summary Judgment as premature.

## BACKGROUND

### I.    FACTUAL BACKGROUND

UnitedHealth sponsors the Plan for 200,000 employees, former employees, and their beneficiaries. (Compl. at¶¶ 27–29, April 23, 2021, Docket No. 1.) Plan participants

may make contributions to their retirement accounts and UnitedHealth matches those contributions.  (*Id.* at ¶ 29.)  The Plan has approximately $15 billion in assets under management.  (*Id.* at ¶ 30; Decl. of Meaghan VerGow ("VerGow Decl."), Ex. 5 at Schedule H, June 23, 2021, Docket No. 43.)  Snyder was a participant in the Plan during the Class Period and Defendants are the fiduciaries of the Plan.  (Compl. at ¶ 12.)

Participants of the Plan can select from various investment options for their 401(k), one of which is a target date retirement fund.  (*Id*. at ¶ 3; VerGow Decl., Ex. 8 at Schedule D.)  A target date fund is designed to achieve certain investment results based on the investor's anticipated retirement date.  (Compl. at ¶ 4.)  A target date fund employs a glidepath which determines how the fund will allocate assets and risk over time, investing in less risky assets the closer a participant gets to their anticipated retirement date.  (*Id.*)  UnitedHealth's target date funds are all managed by Wells Fargo.  (*Id.* at ¶ 33.)  UnitedHealth has designated the Wells Fargo TDFs as the default option for participants of the Plan, so when a participant fails to select one of the other investment options for their 401(k), they are automatically enrolled into their respective Wells Fargo TDF.  (*Id.* at ¶ 57.)

Fidelity, T. Rowe Price, State Street, and Vanguard offer target date funds as well.  (*Id.* at ¶ 58.)  Morningstar, a highly regarded financial services and research firm, classified these four target date funds (the "Morningstar Comparators") as being within the same peer universe as the Wells Fargo TDFs.  (*Id.* at ¶ 47.)  Morningstar determined that the

funds all had the same underlying portfolio holdings. (*Id.* at ¶ 48.) In reaching this conclusion, Morningstar considered: (1) the purpose of the target date funds; (2) how the funds allocate assets among asset classes; and (3) how the funds intend to gradually reduce potential market risk exposure over time. (*Id.* at ¶ 49.)

In order to analyze the performance of the Wells Fargo TDFs, UnitedHealth identified several benchmarks itself, including two indices: the S&P Target Date Indices ("S&P Index") and the Dow Jones Global Target Indices ("Dow Jones Index"). (*Id.* at ¶¶ 46, 63 n.10, 64.) UnitedHealth internally identified the Dow Jones Index as a benchmark, but never disclosed it to Plan participants. (*Id.*) The S&P Index, however, was disclosed to Plan participants as a benchmark for the Wells Fargo TDFs beginning in 2018. (*Id.* at ¶ 46; Decl. of Kelly Bryant, Exs. 1–10, June 23, 2021, Docket No. 44.)

The Complaint alleges that Wells Fargo TDF 2010 through 2060 each chronically underperformed these six different benchmarks over the course of eleven years. The Complaint compiles 33 tables detailing this underperformance. (Compl. at Tables 1.a–11.c.) As demonstrated by Table 5.a below, the Wells Fargo TDFs had a lower cumulative return and lower annualized return than every other comparator for the five years prior to the Class Period. (Compl. at Table 5.a.)

4

**Table 5.a**

October 1, 2010 – December 31, 2015

| Fund | Cumulative Return | Annualized Return |
|---|---|---|
| Wells Fargo Target 2030 | 41.52% | 6.84% |
| FIAM Index Target Date 2030 T | 48.00% | 7.75% |
| State Street Target Ret 2030 NL C1 W | 55.32% | 8.75% |
| T. Rowe Price Ret Hybrid 2030 Tr-T1 | 60.14% | 9.38% |
| Vanguard Target Retirement 2030 Trust II | 56.86% | 8.95% |
| S&P Target Date 2030 TR | 52.21% | 8.33% |
| Dow Jones Global Target Date 2030 | 45.13% | 7.35% |

As illustrated in Table 5.b below, the Wells Fargo TDFs had a lower cumulative compound performance than all other benchmarks during the Class Period.  (Compl. at Table 5.b.)   Notably, though, the Wells Fargo TDFs did outperform some of the benchmarks in 2018 and 2021.[1]

---

[1] The Complaint contains similar tables for Wells Fargo TDF 2010 through 2060.  These tables all exhibit similar patterns of underperformance as the ones contained herein do.

Table 5.b

January 1, 2016 – March 31, 2021

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | |
| Wells Fargo Target 2030 | 7.13% | 15.45% | -5.44% | 19.91% | 10.41% | 2.91% | 59.35% |
| FIAM Index Target Date 2030 T | 8.68% | 17.99% | -5.42% | 22.33% | 14.40% | 2.02% | 73.16% |
| +/- Wells Fargo | -1.55% | -2.54% | -0.02% | -2.42% | -3.99% | +0.89% | -13.81% |
| State Street Target Ret 2030 NL C1 W | 8.20% | 17.98% | -6.71% | 21.72% | 17.53% | 1.90% | 73.61% |
| +/- Wells Fargo | -1.07% | -2.53% | +1.27% | -1.81% | -7.12% | +1.01% | -14.26% |
| T. Rowe Price Ret Hybrid 2030 Tr-T1 | 8.75% | 19.22% | -6.15% | 22.62% | 16.25% | 4.12% | 80.58% |
| +/- Wells Fargo | -1.62% | -3.77% | +0.71% | -2.71% | -5.84% | -1.21% | -21.23% |
| Vanguard Target Retirement 2030 Trust II | 7.93% | 17.60% | -5.79% | 21.15% | 14.19% | 2.47% | 69.50% |
| +/- Wells Fargo | -0.80% | -2.15% | +0.35% | -1.24% | -3.78% | +0.44% | -10.15% |
| S&P Target Date Through 2030 TR | 9.08% | 17.38% | -6.52% | 21.76% | 11.82% | 3.48% | 68.62% |
| +/- Wells Fargo | -1.95% | -1.93% | +1.08% | -1.85% | -1.41% | -0.57% | -9.27% |
| S&P Target Date 2030 TR | 8.35% | 16.19% | -5.99% | 20.38% | 11.91% | 3.24% | 64.58% |
| +/- Wells Fargo | -1.22% | -0.74% | +0.55% | -0.47% | -1.50% | -0.33% | -5.23% |

## II.    PROCEDURAL HISTORY

Snyder filed a class action on behalf of herself and all other similarly situated Plan participants and beneficiaries.  (Compl. at ¶¶ 124–31.)  Defendants filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment.  (Defs' Mot. Dismiss or

for Summ. J., June 23, 2021, Docket No. 40.)  Though discovery has yet to commence, along with their motion Defendants produced 254 documents to Snyder which Defendants claim constitutes the entire fiduciary record.  (Decl. of Brian Boyle, Aug. 25, 2021, Docket No. 72.)  Snyder identified several deficiencies in the production, but the parties have been unable to resolve these issues.  (Rule 56(d) Decl. of Alexandra Harwin, ¶ 4, Aug. 8, 2021, Docket No. 58.)

## DISCUSSION

### I.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

"As a general rule, summary judgment is proper only after the nonmovant has had adequate time for discovery."  *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999).  Discovery has not yet begun in this case.  While Defendants claim they have produced the entire fiduciary record, Snyder has properly submitted a declaration which details how further discovery will enable her to rebut the assertion that there is no genuine issue of material fact.  *See United States ex. rel. Small Bus. Admin. v. Light*, 766 F.2d 394, 397 (8th Cir. 1985).  Thus, the Court will deny Defendants' Motion for Summary Judgment as premature.

### II.   DEFENDANTS' MOTION TO DISMISS

#### A.  Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint

states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to

the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552

F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual

allegations as true and construes the complaint in a light most favorable to the plaintiff,

it is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need

detailed factual allegations" but must include more "than labels and conclusions, and a

formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). On a motion to dismiss, the Court may consider

documents that are necessarily embraced by the complaint, such as publicly available

documents. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012); *Meiners*

*v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018).

### B.  Analysis

ERISA imposes two primary duties on fiduciaries: loyalty and prudence. *Meiners*,

898 F.3d at 822. The fiduciary must discharge its duties "with the care, skill, prudence,

and diligence under the circumstances then prevailing that a prudent man acting in a like

capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1).

To state a claim for breach of fiduciary duty, "a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan."  *Braden*, 588 F.3d at 595.  At the motion to dismiss stage, the ERISA plaintiffs need only show that "a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund[.]"  *Meiners*, 898 F.3d at 822 (internal quotations omitted).  To make such a showing, a plaintiff must provide a sound basis for comparison—a meaningful benchmark.  *Id.*  This requires "more than a bare allegation that cheaper investments exist in the marketplace."  *Id.*  Evidence of underperformance in comparison to a meaningful benchmark is itself circumstantial evidence of a flawed fiduciary process and sufficient to survive a motion to dismiss.  *Id.* at 822–23.  Snyder has identified six different meaningful benchmarks which can be broken down into two categories: the Morningstar Comparators and the Indices.

Defendants contend that Snyder has failed to sufficiently plead that the Wells Fargo TDFs underperformed the benchmarks identified in the Complaint.  Defendants point to the fact that the Wells Fargo TDFs performed better than some of the benchmarks in both 2018 and 2021.  While true, Defendants gloss over the key allegation in the Complaint—the Wells Fargo TDFs' cumulative performance for every single fund was significantly lower than all other benchmarks for eleven years.  (*See, e.g.*, Compl. at

Table 2.b (indicating that Wells Fargo TDF 2015's cumulative compound performance ranged from -6.62% to -19.68% less than the other comparators).)  Outperformance by the Wells Fargo TDFs in one year alone does not preclude Snyder from arguing that Defendants acted imprudently in retaining the funds based upon their cumulative underperformance.  The Court must consider the Complaint as a whole, which plausibly alleges that the Wells Fargo TDFs underperformed the benchmarks over the course of, not only the Class Period, but eleven years in total.

Next, Defendants argue that the Morningstar Comparators cannot constitute meaningful benchmarks because they employed different risk strategies and asset allocations than the Wells Fargo TDFs.  They contend that any underperformance is a result of a more conservative investment strategy intended to sustain investments in down markets, therefore, it was not imprudent to maintain the Wells Fargo TDFs.

Snyder claims that the Morningstar Comparators are meaningful benchmarks since Morningstar classified these funds as falling within the "same peer universe" as the Wells Fargo TDFs because they share similar purposes, allocate funds among asset classes similarly, and gradually reduce market risk exposure in comparable ways.  To the extent that Defendants dispute the similarities between the Wells Fargo TDFs and the Morningstar Comparators, these are factual issues that the Court cannot resolve on a motion to dismiss.  At this stage, because the Court must construe all reasonable inferences in Snyder's favor and take all allegations in the Complaint as true, it would be

10

inappropriate to reach a conclusion other than what the Complaint asserts—the Morningstar Comparators fall within the same peer universe as the Wells Fargo TDFs.

Neither Defendants' assertion that the Wells Fargo TDFs underperformed the Morningstar Comparators because they were more conservative nor their contention that the Wells Fargo TDFs are dissimilar because Defendants offered lower fees is a concrete and obvious explanation for the poor performance of the Wells Fargo TDFs over the Class Period. While these alleged facts may indicate that the Defendants acted prudently, these are certainly not inferences the Court can draw in Defendants' favor on the motion to dismiss. Development of the factual record will illuminate whether these arguments have merit. Therefore, the Morningstar Comparators constitute meaningful benchmarks because they fall within the same universe, and incorporate similar purposes, asset allocations, and risk exposure as the Wells Fargo TDFs.[2]

As for the two Indices identified by Snyder, the fact that Defendants used the Indices as benchmarks themselves strongly supports an inference that they are meaningful. Defendants argue that the Indices cannot constitute meaningful benchmarks because the S&P Index was not identified as a benchmark by Defendants until 2018 and

---

[2] Snyder also claims that the entire Morningstar peer universe constitutes a meaningful benchmark and the Wells Fargo TDFs underperformance against these funds should be taken into consideration by the Court. Since other meaningful benchmarks exist sufficient to survive the motion to dismiss, the Court need not consider the entire Morningstar peer universe in ruling on this motion. Regardless, Snyder's argument is barred by *Meiners* which held that permitting these types of comparators would allow "plaintiffs to dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some similarity." 898 F.3d at 823.

the Dow Jones Index was only used as a benchmark prior to the Class Period.  Defendants claim that short-term underperformance cannot support an inference of imprudence. And while it is true that standing alone, the S&P Index or the Dow Jones Index may not constitute a meaningful benchmark, the Court must look to the allegations in the Complaint as a whole.   The Complaint alleges underperformance of the Wells Fargo TDFs against six benchmarks in total.   In particular, the claims asserted in the Complaint regarding the Indices bolster the plausible allegations of imprudence because they increase the likelihood that Defendants were aware, prior to and during the Class Period, that their funds were significantly inferior to other readily available investments in the marketplace.

Lastly, though Defendants rely on *Meiners* to argue for dismissal, the case in fact supports denial of their motion.  In *Meiners*, the Eighth Circuit held that the plaintiff failed to identify a meaningful benchmark.  898 F.3d at 823.  The plaintiff had identified only one benchmark that had outperformed the fund at issue and the Eight Circuit concluded that "[t]he fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the Wells Fargo TDFs were an imprudent choice at the outset."   *Meiners*, 898 F.3d at 823.  But here, Snyder has identified not one, but six different meaningful benchmarks, all of which the Wells Fargo TDFs underperformed against over the course of eleven years.  Snyder's claims amount to more than a bare allegation that cheaper investments exist in the marketplace.  She

has demonstrated that there was long-term underperformance of the Wells Fargo TDFs in comparison to meaningful benchmarks, which plausibly raises an inference of imprudence and is sufficient to survive a motion to dismiss.  Thus, the Court will deny Defendants' motion.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 40] is **DENIED.**

2. Defendants' Motion to Dismiss [Docket No. 40] is **DENIED.**


DATED: December 2, 2021                     _____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                                                  Chief Judge
                                                      United States District Judge