**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| KIM SNYDER, on behalf of herself and all others similarly situated, | ) ) Case No. 0:21-cv-01049 (JRT/DJF) |
| | ) |
| Plaintiff, | ) CLASS ACTION |
| | ) |
| v. | ) MEMORANDUM OF LAW IN |
| | ) SUPPORT OF PLAINTIFF'S MOTION |
| UNITEDHEALTH GROUP, INC., et al. | ) FOR PRELIMINARY APPROVAL OF |
| | ) CLASS ACTION SETTLEMENT |
| Defendants. | ) |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     SUMMARY OF CLAIMS AND DEFENSES ........................................... 2

III.    LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS ..................... 3

        A.      Pre-Filing Investigation ................................................... 3

        B.      Litigation and Initial Attempts at Settlement ................................ 4

        C.      Negotiations and Settlement ................................................ 6

        D.      Plaintiff's Services to the Class Members and the Plan .............................. 6

IV.     OVERVIEW OF THE SETTLEMENT AND PLAN OF ALLOCATION TERMS
        ................................................................................ 7

        A.      Monetary Relief ........................................................... 7

        B.      Review By Independent Fiduciary ........................................... 8

        C.      Class Notice and Settlement Administration ................................. 8

        D.      Plan of Allocation ......................................................... 9

        E.      Release of Claims ........................................................ 10

        F.      Attorneys' Fees and Class Representative Award ...................... 12

V.      LEGAL STANDARD ..................................................................... 12

        A.      The Standard for Judicial Approval of Class Action Settlements.............. 13

        B.      The Relevant Factors for Preliminary Approval ......................... 14

VI.     ARGUMENT ............................................................................ 14

        A.      Plaintiff and Her Counsel Have Adequately Represented the Class.......... 15

        B.      The Proposed Settlement Was Negotiated at Arm's Length ...................... 16

        C.      The Proposed Settlement Provides Fair and Reasonable Compensation .... 18

                1.      The Proposed Settlement is Fair and Reasonable when Balanced
                        Against the Merits of Plaintiff's Claims ........................... 18

                2.      The Complexity, Expense, Risks, and Delay of Further Litigation
                        Support Approval.................................................. 22

                3.      The Proposed Method of Distributing Relief to the Class Is Effective
                        ................................................................. 23

                4.      The Terms of the Proposed Award for Attorneys' Fees Present No
                        Obstacle to Approval............................................. 25

        D.      The Proposed Settlement Treats Class Members Equitably ...................... 26

E.     The Remaining Factors Do Not Weigh Against Approval ......................... 29

VII.   NOTICE TO THE CLASS ..................................................................... 30

VIII.  CONCLUSION ................................................................................... 31

# TABLE OF AUTHORITIES

**CASES**

*Abbott v. Lockheed Martin Corp.*,
No. 06-cv-701, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) ....................... 28

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n,*
No. 1:17-cv-00563, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ......................... 22

*Becker v. Wells Fargo*,
No. 0:20-CV-02016, 2022 WL 3909343 (D. Minn. Aug. 31, 2022) ................... 22

*Beneli v. BCA Fin. Servs.*,
324 F.R.D. 89 (D.N.J. 2018) ................................................................. 23

*Bonime v. Doyle*,
416 F. Supp. 1372 (S.D.N.Y. 1976) ....................................................... 21

*Bonime v. Doyle*,
556 F.2d 555 (2d Cir. 1977) ................................................................. 21

*Braden v. Wal Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ................................................................ 20

*Caligiuri v. Symantec Corp.*,
855 F.3d 860 (8th Cir. 2017) ................................................................ 17

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011). ......................................................................... 29

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996) .............................................................. 13

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................... 21

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ......................................................... 27, 28

*Cullan & Cullan LLC v. M-Qube, Inc.*,
No. 8:13CV172, 2016 WL 5394684 (D. Neb. Sept. 27, 2016) ........................ 23

*Dennard v. Transamerica Corp.*,
No. 1:15-cv-00030-EJM (N.D. Iowa May 20, 2016) ................................... 25

*Flynn v. N.Y. Dolls Gentlemen's Club*,
No. 13 CIV. 6530 PKC RLE, 2014 WL 4980380 (S.D.N.Y. Oct. 6, 2014) ......... 17

*Fritton v. Taylor Corp.*,
No. 22-CV-00415, 2024 WL 3717351, at *3 (D. Minn. Aug. 8, 2024)................ 26

*George v. Uponor Corp.*,
Civ. No. 12–249 (ADM/JJK), 2015 WL 5255280 (D. Minn. Sept. 9, 2015) ........ 19

iii

*Glynn v. Maine Oxy-Acetylene Supply Co.*,
No. 2:19-CV-00176-NT, 2022 WL 17617138 (D. Me. Dec. 13, 2022) .......... 17, 18

*Grier v. Chase Manhattan Auto. Fin. Co.*,
Civ. A. 99–180, 2000 WL 175126 (E.D. Pa. Feb. 16, 2000) ................................ 19

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ................................................................................ 24

*Hashw v. Dep't Stores Nat'l Bank*,
182 F. Supp. 3d 935 (D. Minn. 2016) ........................................................... 13, 19

*In re Emp. Benefit Plans Sec. Litig.*,
Civ. No. 3–92–708, 1993 WL 330595 (D. Minn. June 2, 1993) ........................... 16

*In re Flint Water Cases*,
571 F. Supp. 3d 746 (E.D. Mich. 2021) .............................................................. 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ................................................................................... 13

*In re Target Corp. Customer Data Sec. Breach Litig.*,
892 F.3d 968 (8th Cir. 2018) ............................................................................... 19

*In re U.S. Bancorp Litigation*,
291 F.3d 1035 (8th Cir. 2002) ............................................................................. 27

*In re Uponor, F1807 Plumbing Fittings Prod. Liab. Litig.*,
716 F.3d 1057 (8th Cir. 2013) ................................................................... 12, 13, 14

*In re Wells Fargo ERISA 401(k) Litig.*,
331 F. Supp. 3d 868 (D. Minn. 2018) ............................................................ 20, 21

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
396 F.3d 922 (8th Cir. 2005) .......................................................................... 19, 30

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................. 27

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
No. 08-MDL-1958 ADM/AJB, 2013 WL 716088 (D. Minn. Feb. 27, 2013) . 14, 16

*Johnson v. Fujitsu Tech. & Bus. of America, Inc.*,
No. 16-cv-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ................... 22

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) ............................................................................... 19

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
No. 15-CV-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016) ............... 17

*Khoday v. Symantec Corp.*,
No. 11-CV-180 (JRT/TNL), 2016 WL 1637039 (D. Minn. Apr. 5, 2016)..... 16, 17, 18, 25

*Krueger v. Ameriprise Fin., Inc.*,
  No. 11-CV-02781 SRN/JSM, 2015 WL 4246879 (D. Minn. July 13, 2015) . 22, 23, 25

*Kruger v. Lely N. Am., Inc.*,
  No. 020-CV-00629-KMM/DTS, 2023 WL 5665215 (D. Minn. Sept. 1, 2023) ... 27, 28

*Kruger v. Novant Health, Inc.*,
  No. 1:14CV208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .......................... 26

*LaRue v. DeWolff; Boberg & Assocs., Inc.*,
  552 U.S. 248, 254 (2008) ......................................................................... 28

*Marshall v. Nat'l Football League*,
  787 F.3d 502 (8th Cir. 2015) ................................................................... 21

*Martin v. Cargill, Inc.*,
  295 F.R.D. 380, 383 (D. Minn. 2013) ...................................................... 13

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134, 142 n.9 (1985) ................................................................... 28

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ................................................................... 20

*Milken & Assoc. Sec. Lit.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) ................................................................ 21

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  No. 15-CV-09936 (LGS) (S.D.N.Y. Aug. 14, 2018) ............................................. 25

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ................................................................................ 24

*Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*,
  No. CV 20-12698, 2022 WL 17582004 (E.D. Mich. Dec. 12, 2022) .................. 17

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*,
  712 F.3d 705 (2d. Cir. 2013) .................................................................. 21

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ........................................................ 12, 14, 23, 30

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
  74 F.4th 171 (4th Cir. 2023) .................................................................. 21

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................. 28

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ................................................................ 19

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015) ........................................................................... 22

*Tracey v. Mass. Inst. Tech.*,
  404 F. Supp. 3d 356 (D. Mass. 2019) .................................................. 20

*Tussey v. ABB, Inc.*,
  850 F.3d 951 (8th Cir. 2017) ............................................................... 22

*Tussey v. ABB, Inc.*,
  No. 06-CV-04305-NKL, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ....... 23, 27

*United States v. Equitable Tr. Co. of N.Y.*,
  283 U.S. 738, 744 (1931) ................................................................... 29

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) ......................................................... 14, 19

*Wal-Mart Stores Inc v. Visa USA Inc*,
  396 F.3d 96, 114 (2d Cir. 2005) .......................................................... 14

*White v. Nat'l Football League*,
  822 F. Supp. 1389 (D. Minn. 1993) ..................................................... 14

*Wildman v. Am. Cent. Services, LLC*,
  362 F. Supp. 3d 685 (W.D. Mo. 2019) .................................................. 21

*Zilhaver v. UnitedHealth Group, Inc.*,
  646 F. Supp. 2d 1075 (D. Minn. 2009) ................................... 22, 24, 26, 28

**FEDERAL STATUTES**
29 U.S.C. §1001 ....................................................................................... 3

**REGULATIONS**
29 C.F.R. §2520 ..................................................................................... 15

75 Fed. Reg. 33830 .................................................................................. 8

**OTHER AUTHORITIES**
4 *Newberg* § 13:48 (5th ed. June 2021 update) ..................................... 18

Manual for Complex Litigation, Fourth, § 21.632 (2004) ......................... 13

**RULES**
Fed. R. Civ. P. 23(a)(4) .......................................................................... 15

Fed. R. Civ. P. 23(e)(1) .......................................................................... 14

Fed. R. Civ. P. 23(e)(2) ...................................................................... 14, 18

## I.    INTRODUCTION

This ERISA class action has been pending for more than three years. Now, on behalf of herself and the Class, Plaintiff seeks preliminary approval of a proposed Settlement[1] that provides substantial relief to a Class of over 300,000 current and former participants in the UnitedHealth Group 401(k) Savings Plan (the "Plan"): UnitedHealth Group, Inc. ("United") and/or its insurers will pay, or cause to be paid, $69,000,000.00 in cash (the "Settlement") to be distributed to current and former Plan participants who invested in the Wells Fargo Target Fund Suite from April 23, 2015 through the date of judgment ("Class Period").[2]

The Settlement comes after three and a half years of robust litigation, which included two summary judgment motions, full fact and expert discovery with thousands of documents, twenty depositions, and eight written reports among four experts. The Settlement was the product of weeks of vigorous arm's-length negotiation with an independent mediator culminating in a mediator's proposal. This extensive process allowed the Parties to fully understand the value of their claims and the risks of litigation. As a result, the Parties reached an agreement that presents substantial benefits to the Class Members, promotes judicial economy, and contains no deficiencies that prevent approval.

---

[1] A proposed order granting the relief requested herein is attached to the Settlement Agreement as Exhibit A and is also attached to this Motion for Preliminary Approval of Class Action Settlement.

[2] The Wells Fargo Target Fund Suite refers collectively to the funds identified in the Court's Order certifying the Class: Wells Fargo DJ Target Date N and Wells Fargo Target Date CIT E3 Funds dated 2010, 2015, 2020, 2025, 2030, 2035, 2040, 2045, 2050, 2055, and 2060. Dkt. 137, at 3.

Under the terms of the proposed Settlement, United and/or its insurers will pay, or cause to be paid, $69,000,000 into a settlement fund (the "Settlement Fund"), which will be allocated *pro rata* among Class Members pursuant to a Plan of Allocation (after deduction of any attorneys' fees, expenses, and Class Representative award approved by the Court). Class Counsel, Sanford Heisler Sharp McKnight, LLP, believes the Settlement provides fair, reasonable, and adequate relief to the Class Members.

To effectuate the Settlement, Plaintiff respectfully asks this Court to enter an Order: (1) granting preliminary approval of the Settlement; (2) enjoining Class members from pursuing any claims that arise out of or relate to the claims at issue in this action pending final approval;  (3) directing notice to the Class Members and approving the plan and form of notice, including the procedures for objecting to the Settlement; (4) appointing Angeion Group, LLC as Settlement Administrator and Escrow Agent; and (5) scheduling a final Fairness Hearing, at which the Court will consider the motion for final approval of the Settlement and entry of the Parties' proposed Final Judgment and Order of Dismissal with Prejudice and Class Counsel's application for an award of attorneys' fees and expenses, and payment of a Class Representative service award.

## II.    SUMMARY OF CLAIMS AND DEFENSES

This is a certified class action on behalf of all participants in the UnitedHealth Group 401(k) Savings Plan, who invested in the Wells Fargo Target Fund Suite during the Class Period. Plaintiff, as an individual and as a representative of the Class, filed this Class Action on April 23, 2021, later amended on August 24, 2022, against Defendants UnitedHealth Group, Inc. ("United" or the "Company") and various other related entities and individuals

(collectively, "Defendants"). *See* Dkt. 1, Dkt. 119. Plaintiff alleged that Defendants breached their fiduciary duties and engaged in prohibited transactions in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"), by imprudently and disloyally selecting, retaining, and monitoring a suite of poorly performing funds—the Wells Fargo Target Fund Suite—for the Plan's investment menu. *See, e.g.*, Dkt. 119, ¶¶ 153–64, 175–202. Plaintiff has hired an expert who calculated recoverable damages relative to widely accepted target date fund peer universes, with potential damages ranging from approximately $276.1 million relative to the Morningstar Lifetime Moderate Target Date Indices, to $339.8 million relative to the S&P Target Date Indices.

Defendants deny these allegations and contend that their monitoring and selection processes complied with the fiduciary standards under ERISA. Defendants also contend that the Wells Fargo Target Fund Suite was a reasonable investment option during the Class Period and that they committed no fiduciary breaches or prohibited transactions of any kind in their administration of the Plan. Defendants and their experts further challenge Plaintiff's expert's damage calculations and deny that Plaintiff and the Class are entitled to any recovery of damages whatsoever.

## III.    LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

### A.    Pre-Filing Investigation

Class Counsel undertook an extensive and thorough investigation of the claims starting months before filing the Complaint and continuing through extensive fact and expert discovery and summary judgment. Prior to filing the original Complaint, Sanford

Heisler Sharp McKnight attorneys and staff undertook a thorough and careful investigation, spanning months, that entailed: (1) examining Plan documents and participant disclosures; (2) analyzing Department of Labor filings from the Plan and Wells Fargo to quantify assets under the Plan's management; (3) assessing the investment structure and objectives of the Plan's investment options based upon filings made with the Securities and Exchange Commission ("SEC"); (4) reviewing SEC filings of Wells Fargo and its affiliated investment entities; (5) identifying appropriate benchmarks and comparator funds; (6) calculating the 10-year performance of the Plan's investment options relative to the selected benchmarks and comparator funds; (7) ascertaining potential injury to the Plan; and (8) conducting legal research. Declaration of Charles H. Field, Exhibit 1 ("Field Dec.") ¶ 8.

> B.     **Litigation and Initial Attempts at Settlement**

After this extensive investigation, Plaintiff filed the original Class Action Complaint on April 23, 2021. Dkt. 1. On June 23, 2021, Defendants moved to dismiss the initial Complaint, or in the alternative, for summary judgment. Dkt. 40. After full briefing and oral arguments, the Court fully denied both of Defendants' motions. Dkt. 96. Discovery commenced in or about February 2022. Dkt. 85. Through discovery, Class Counsel reviewed over 84,000 pages of documents produced by Defendants. Field Dec. ¶ 9. Following the substantial completion of Defendants' document production, the Parties first attempted mediation in July 2022 with a well-respected independent mediator. Field Dec. ¶ 14.

After mediation failed, the Parties engaged in further extensive discovery, including thirteen depositions of Defendants and their agents, and Defendants' deposition of Plaintiff, Kim Snyder. Field Dec. ¶ 9. Class Counsel also subpoenaed two non-parties, received a total of over 35,000 pages of documents from those non-parties, and deposed two agents of one of the non-parties. *Id.* Fact discovery ended in April 2023, after which the Parties exchanged initial expert reports. *See* Dkt. 85; Dkt. 122; Dkt. 136. Plaintiff and Defendants each submitted reports from two experts—a liability expert and a damages expert—and both Parties submitted rebuttal expert reports responding to each initial expert report. All experts were deposed. Field Dec. ¶ 10. After the exchange of initial and rebuttal expert reports, in June 2023, the Parties participated in a court-ordered settlement conference before Magistrate Judge Dulce J. Foster, but again did not resolve the case. Field Dec. ¶ 14.

On August 11, 2023, Defendants moved for summary judgment on all claims. Dkt. 168. The Parties fully briefed this motion, supported by a combined total of 236 exhibits, then presented oral argument before this Court on February 6, 2024. On March 12, 2024, the Court issued an order substantially denying Defendants' motion for summary judgment: the Court granted summary judgment only as to Plaintiff's claim for failure to adhere to Plan documents (Count II) and the inclusion of United's Board of Directors as Defendants, while denying summary judgment as to all other claims. *See* Dkt. 207. The Court advised that this case would be placed on the Court's next available trial date and instructed the Parties to engage in alternative dispute resolution. *See* Dkt. 207; Dkt. 208.

## C.    Negotiations and Settlement

On July 18, 2024, the Parties engaged in a day-long mediation before a highly regarded JAMS mediator, Robert A. Meyer, who is experienced in the mediation of complex civil cases including ERISA class actions. After extensive mediation briefing and negotiations, the Parties failed to reach a settlement. Field Dec. ¶ 15. Thereafter, the Parties continued to negotiate for weeks through Mr. Meyer. *Id.* On September 17, 2024, the Parties reached a settlement in principle, which was the result of a proposal by the mediator, Mr. Meyer. *See* Dkt. 223; Field Dec. ¶ 16.

## D.    Plaintiff's Services to the Class Members and the Plan

Plaintiff, Kim Snyder, was a participant in the Plan who invested in the Wells Fargo Target 2035 Fund during the Class Period. She has been involved throughout the litigation and has contributed to the investigation, discovery, and settlement of the Class claims. Ms. Snyder dedicated considerable time and energy to the case and to promoting the interests of the Class, including by being deposed, and bore the particular burden of being the only Class Representative in the Action. *See* Declaration of Kim Snyder, Exhibit 2 ("Snyder Dec."). Ms. Snyder put her name in the public arena as the sole Class Representative, risking her reputation and future career prospects for the benefit of the Class. Ms. Snyder further dedicated over 340 hours to the case over the course of three and a half years of litigation, performing actions that benefited the Class at large, including: furnishing her 401(k) account statements to Class Counsel; providing explanations to Class Counsel about the Plan's investment options and providing Class Counsel with the UnitedHealth Group 401(k) Savings Plan Summary Plan Description and Disclosure Notice, among other

documents; contributing to and diligently reviewing all the court filings with meticulous attention, including the initial and amended complaints for factual accuracy; reviewing memoranda, exhibits, and court orders related to Defendants' Motion to Dismiss and Motions for Summary Judgment; providing written interrogatory responses and assisting Class Counsel with the review of discovery requests; preparing and sitting for a deposition; closely reviewing the 187-page transcript of her deposition for accuracy and assisting with the preparation of errata; assisting Class Counsel in preparing for two all-day mediations and one mandatory settlement conference and making herself available during these proceedings; participating in numerous phone calls with Class Counsel regarding settlement discussions; and reviewing the Settlement Agreement and Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement. *Id.* at ¶¶ 7–10.

Plaintiff understands her responsibilities as the representative of Class members and has been in regular contact with Class Counsel to monitor the Class Action and provide important input and advice, including in settlement negotiations. *Id.* at ¶¶ 9, 12.

## IV.    OVERVIEW OF THE SETTLEMENT AND PLAN OF ALLOCATION TERMS

### A.    Monetary Relief

Under the Settlement, United and/or its insurers will pay, or cause to be paid, $69,000,000 into the Settlement Fund, which will be held in an Escrow Account. Following any deductions for Court-approved (a) attorneys' fees and expenses, (b) class representative award, and (c) Notice and Administration Costs which include taxes and tax

expenses and settlement administrator, recordkeeper, and independent fiduciary costs, the Net Settlement Fund will be distributed to Class Members according to the Plan of Allocation. *See* Settlement Agreement, Exhibit 3 ("Ex. 3"), at ¶ 1.49.

### B.    Review By Independent Fiduciary

Prior to submission to the Court for final approval, United will select and retain an Independent Fiduciary, on behalf of the Plan, to review the Settlement to determine whether to approve and authorize Plaintiff's Released Claims. Ex. 3, ¶ 1.31; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003-39"). All reasonable costs and expenses of the Independent Fiduciary shall be paid out of the Escrow Account. Ex. 3, ¶ 2.2. The Parties will provide the Independent Fiduciary with sufficient information to support the Independent Fiduciary's review and evaluation. *Id.*, ¶ 2.2. The Independent Fiduciary will issue its report at least seventy (70) calendar days prior to the Fairness Hearing. *Id.*, ¶ 2.2(b). Should the Independent Fiduciary decline to approve the Settlement, the Settlement Agreement shall automatically terminate. *Id.*, ¶ 2.2(c).

### C.    Class Notice and Settlement Administration

Class Members will be sent a direct notice of the settlement ("Class Notice")[3] via email or by first-class mail, postage prepaid, where no email is available. The Class Notice shall be sent to the last known email or mailing address of each Class Member provided by the Plan's recordkeeper, unless an updated email or mailing address is obtained by the

---

[3] The Class Notices are attached as Exhibit A-1 to the Settlement Agreement.

Settlement Administrator through its efforts to verify the last known address provided by the Plan's recordkeeper. The Settlement Administrator shall provide any updated addresses it finds to the Company and the Plan's recordkeeper for purposes of administration of the Plan. Ex. 3, ¶ 3.2(f).

The Settlement Administrator will also establish a Settlement website on which it will post the Class Notice, Former Participant Rollover Form, Settlement Agreement, Amended Class Complaint, and other relevant case documents. For any Class Members who would like more information about the Settlement, the Class Notice will provide a telephone number connecting them with a live agent from the Settlement Administrator.

### D.    Plan of Allocation

The Plan of Allocation provides that the Net Settlement Amount will be allocated to Class Members who were Plan participants and invested in the Wells Fargo Target Funds during the Class Period.[4] First, the Settlement Administrator will calculate a "Settlement Allocation Score" for each Class Member based on the dollars held in a fund of the Wells Fargo Target Fund Suite and the performance of that fund during the relevant portion of the Class Period. Ex. 3, ¶ 5.1. Next, the Settlement Administrator shall determine each Class Member's share of the Net Settlement Fund based on his or her Settlement Allocation Score compared to the sum of all Class Members' Settlement Allocation Scores. Each Class Member's share of the Net Settlement Fund shall be referred to as the "Entitlement Amount." *Id.*, ¶ 5.2.

---

[4] The Plan of Allocation is detailed in Article V of the Settlement Agreement. Ex. 3, Art. 5.

Current Plan Participants will receive their Entitlement Amount in the form of a deposit into their Plan account. *Id.*, ¶ 5.3. Former Plan Participants and Beneficiaries of Current or Former Plan Participants will have the option to receive their settlement payment through a rollover to a qualified retirement account by completing the Former Participant Rollover Form. *Id.*, ¶¶ 5.4, 5.5; *see also id.* at Ex. A-2. Former Participants or Beneficiaries of Current or Former Participants who do not complete the Former Participant Rollover Form will receive their payment in the form of a check. Ex. 3, ¶¶ 5.4, 5.5.

Alternate Payees of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's settlement payment will receive such payment pursuant to the terms of the applicable Qualified Domestic Relations Order. *Id.*, ¶ 5.5. Alternate Payees of Former Participants will receive such payment pursuant to the same method as Former Participants. *Id.*

### E.    Release of Claims

In exchange for the relief provided by the Settlement, Class Members will release Defendants and affiliated persons from all Plaintiff's Released Claims, defined as those:

a)    that were asserted in the Action (including any assertion set forth in the Complaint, the First Amended Complaint, or any other submission made by the Class Representative, her expert witnesses, or Class Counsel in connection with the Action), or could have been asserted in the Action, or that otherwise arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences

asserted in the Action, whether or not pleaded in the Complaint or the First Amended Complaint, including, but not limited to, those that arise out of, relate to, are based on, or have any connection with: (1) the selection, retention, and monitoring of the Plan's investment options, including but not limited to the Wells Fargo Target Fund Suite; (2) the performance, fees, and other characteristics of the Plan's investment options, including but not limited to the Wells Fargo Target Fund Suite; (3) the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries; (4) compliance with the Plan's governing documents with respect to the selection, retention, and monitoring of the Plan's investment options, including but not limited to the Wells Fargo Target Fund Suite; (5) the compensation received by the Plan's service providers and investment advisers; (6) alleged breach of the duty of loyalty, care, prudence, diversification, or prohibited transactions during the Class Period in relation to the Plan's investment options; and (7) alleged failure to monitor the individuals who possessed delegated authority to remove the Wells Fargo Target Fund Suite from the Plan;

b)    that would be barred by *res judicata* based on the Court's entry of the Final Judgment and Order of Dismissal with Prejudice;

c)    that relate to the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

d)    that relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought by the Independent Fiduciary alone. Ex. 3, at ¶ 1.38.

### F.   Attorneys' Fees and Class Representative Award

Class Counsel will apply for reasonable attorneys' fees of up to one-third of the $69,000,000 Settlement Amount. *See* Ex. 3, at ¶ 6.1. Class Counsel will also apply for an award of their litigation expenses. Subject to Court approval, Class Counsel's fees and expenses shall be paid from the Settlement Fund. Plaintiff Kim Snyder shall petition the Court for a class representative compensation award not to exceed $100,000 in recognition of her service as sole Class Representative, and the efforts and risks she has undertaken, without which no settlement would be possible. Such an award provides an incentive for other employees to bring cases that vindicate the public's interest in having retirement funds prudently managed.

## V.   LEGAL STANDARD

It is well settled in this Circuit that settlement is a highly favored means of resolving complex class action litigation. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999)  ("[A] strong public policy favors agreements, and courts should approach them with a presumption in their favor.") (citation omitted); *see also In re Uponor, F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) ("A settlement agreement is presumptively valid.") (internal quotation omitted); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Settlement spares the litigants the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial resources. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

**A.    The Standard for Judicial Approval of Class Action Settlements**

Court approval of a proposed class action settlement involves two steps: preliminary and final approval. *In re Uponor*, 716 F.3d at 1061. At the "preliminary approval" stage, the Court is not required to undertake an in-depth consideration of the final approval factors. *See Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (emphasis at preliminary-approval stage is "only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies") (citation omitted). Instead, it "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual for Complex Litigation, Fourth, § 21.632 (2004); *accord Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 942–43 (D. Minn. 2016) (citing Manual for Complex Litigation (Fourth) § 21.632 (2004)).

As part of preliminary approval, due process and Federal Rule of Civil Procedure 23(e) require the Court to "direct notice in a reasonable manner to all class members" who will be bound by the Settlement. Notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (quotation marks and citations omitted).

The Court will again evaluate the proposed class action settlement at the final approval stage and make a final determination that it is fair, reasonable, and adequate.

### B.    The Relevant Factors for Preliminary Approval

In deciding whether to grant preliminary approval and direct notice, the Court must evaluate whether final approval of the settlement is likely. *See* Fed. R. Civ. P. 23(e)(1)(B). On final approval, the Court must determine that the settlement is "fair, reasonable and adequate" taking into consideration the factors identified in Rule 23(e)(2). *In re Uponor*, 716 F.3d at 1063 (quoting Fed. R. Civ. P. 23(e)(2)).

In addition to those in Rule 23(e)(2), district courts in the Eighth Circuit "should consider (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *In re Uponor*, 716 F.3d at 1063 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (internal alterations and quotation marks omitted)).

Further, "strong public policy favors [settlement] agreements." *See Petrovic*, 200 F.3d at 1148 (citation omitted). Indeed, the "policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (quoting *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993)).

## VI.    ARGUMENT

The Parties' Settlement meets each of the Rule 23(e)(2) factors and the additional factors considered in the Eighth Circuit. Accordingly, the Court should preliminarily approve the Settlement and notice to the Class.

### A.    Plaintiff and Her Counsel Have Adequately Represented the Class

Plaintiff and her counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently investigating and prosecuting this Action. As an initial matter, the Court previously granted Plaintiff's stipulated Motion for Class Certification, Dkt. 137, which required a finding that Plaintiff and her counsel will adequately represent the Class. *See* Fed. R. Civ. P. 23(a)(4).

Class Counsel took all steps needed to ensure the success of this Action. Among other things, Plaintiff and Class Counsel investigated the relevant factual events, requested and analyzed the disclosure documents provided to Plan participants pursuant to §§ 104(b)(2) and 104(b)(4) of ERISA, including, without limitation, the Plan's Summary Plan Description, Department of Labor filings filed by the Plan, SEC filings filed by United, and the fees and performance of the investment options offered to Plan participants. Furthermore, Class Counsel researched the legal issues underlying Plaintiff's claims, drafted a detailed initial Class Action Complaint and Amended Class Action Complaint, and successfully opposed Defendants' motion to dismiss or, in the alternative, for summary judgment. Class Counsel also completed fact discovery. They propounded and responded to written discovery, including the review and analysis of more than 120,000 pages of documents from Defendants and third parties. Class Counsel took thirteen depositions of Defendants and their agents and two depositions of non-parties and defended the deposition of the Plaintiff. They also completed expert disclosure and discovery, including the submission of expert reports by two experts, and the depositions of Defendants' two experts and Plaintiff's two experts. Class Counsel successfully opposed the vast majority

of Defendants' later motion for summary judgment. Class Counsel mediated and held post mediation discussions with an experienced mediator that resulted in a settlement shortly before this matter was ready to be scheduled for trial. *See In re Zurn Pex,* 2013 WL 716088, at *6 (observing that "[s]ettlement agreements are presumptively valid, particularly where a settlement has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .") (citations omitted). Accordingly, the factor of adequate representation weighs in support of approval.

### B.    The Proposed Settlement Was Negotiated at Arm's Length

As discussed *supra* in Section III, the proposed Settlement is the product of an intensive arm's length negotiation conducted through an independent mediator, achieved only after vigorous and extensive litigation. The circumstances under which the Parties achieved the proposed Settlement further supports the presumption of validity.  *See In re Emp. Benefit Plans Sec. Litig.*, Civ. No. 3–92–708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *Khoday v. Symantec Corp.,* No. 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *8 (D. Minn. Apr. 5, 2016), report and recommendation adopted, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd, Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017) ("an absence of collusion is reasonably inferred in light of the fact that the adversarial process of this litigation has been vigorous during the course of the dispute . . . .").

There is no hint of collusion given the extensive settlement negotiations that took place with the involvement of Mr. Meyer, "a well-respected and experienced mediator."

*Glynn v. Maine Oxy-Acetylene Supply Co.*, No. 2:19-CV-00176-NT, 2022 WL 17617138, at *4 (D. Me. Dec. 13, 2022) ; *see also Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *2 (D. Conn. Nov. 3, 2016) ("the parties agreed to mediation before Robert A. Meyer . . . who is experienced with mediating large, complex matters similar to this case, including other ERISA class actions."); *Palm Tran, Inc. Amalg'd Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*, No. 20-12698, 2022 WL 17582004, at *4 (E.D. Mich. Dec. 12, 2022) ("The parties employed an experienced mediator, Robert Meyer, Esq., who himself has been involved in hundreds of disputes and has served as a mediator since 2006.").

Plaintiff left the mediation with the Parties still far apart, and, through Mr. Meyer, engaged in post-mediation discussions that lasted weeks and resulted in a settlement in principle only after a mediator's proposal. The use of an independent mediator is a hallmark of an arm's-length negotiation. *See, e.g.*, *Khoday*, 2016 WL 1637039, at *5; *see also Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530(PKC)(RLE), 2014 WL 4980380, at *2 (S.D.N.Y. Oct. 6, 2014) (granting preliminary approval) ("An experienced class action employment mediator . . . assisted the parties with the settlement negotiations . . . . This reinforces the non-collusive nature of the settlement."); *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) ("'[T]here appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a neutral third party mediator[.]'") (quoting 4 *Newberg* § 13:48 (5th ed. June 2021 update) (alterations in original)). Indeed, a settlement is "presumptively valid" when "supervised by an independent mediator . . . ." *Khoday*, 2016 WL 1637039, at *5.

Here, as in *Glynn*, where the parties also mediated with Mr. Meyer:

> In advance of the mediation, the parties submitted comprehensive mediation statements to Mr. Meyer. Moreover, the settlement was the product of the mediator's proposal, which was circulated after it became clear the parties would not achieve a settlement on their own. . . . Accordingly, I find that the settlement is the product of fair, arm's-length negotiations, which entitles the parties to a presumption that the settlement is reasonable.

*Glynn*, 2022 WL 17617138, at *4.

Given the experience of the mediator and the extensive process described above, Plaintiff has readily met the requirement of presenting a settlement that was negotiated at arm's length.

### C.    The Proposed Settlement Provides Fair and Reasonable Compensation

In assessing the adequacy of relief provided in the proposed Settlement, the Court should take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).  Relatedly, the Eighth Circuit also balances "the strength of the plaintiff's case against the terms of the settlement" and "the complexity and expense of further litigation" when evaluating the adequacy of the relief. . Here, each factor weighs in favor of approval.

### 1.    The Proposed Settlement is Fair and Reasonable when Balanced Against the Merits of Plaintiff's Claims

Courts in the Eighth Circuit consider "a balancing of the strength of the plaintiff's case against the terms of the settlement," to be "[t]he single most important factor" in

assessing proposed class settlements. *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018) (quoting *Keil v. Lopez*, 862 F.3d 685, 695 (8th Cir. 2017)); *see In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). The strength of Plaintiff's case "is not a simple mathematical exercise with definite outcomes; a 'high degree of precision cannot be expected in valuing a litigation.'" *Hashw*, 182 F. Supp. 3d at 943 (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006)).

In this assessment, "courts give great weight to and may rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *George v. Uponor Corp*., Civ. No. 12–249 (ADM/JJK), 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 2015) (internal marks omitted). Through the extensive discovery in this case, counsel for the Parties understand the strengths and weakness of their respective positions. *Grier v. Chase Manhattan Auto. Fin. Co.*, No. Civ. A. 99–180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000) (finding "[a]n initial presumption of fairness . . . to a class settlement reached in arm['s]-length negotiations between experienced and capable counsel after meaningful discovery."). Here, Class Counsel's opinion that the proposed Settlement is fair, reasonable, and adequate carries significant weight given their extensive experience in complex class litigation and litigation of ERISA breach of fiduciary duty claims, including negotiating numerous successful settlements. *See* Field Dec. ¶¶ 3, 19–34.

Moreover, ERISA class actions present numerous hurdles to proving liability, and it is far from certain that Plaintiff will ultimately be successful proving liability or damages. To prevail on the breach of fiduciary duty claims, Plaintiff must prove that Defendants'

19

process for monitoring Plan options was "tainted by a failure of effort, competence or loyalty." *Braden v. Wal Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Plaintiff must prove that Defendants breached their duty to prudently and loyally monitor the Wells Fargo Target Fund Suite and failed to timely remove them, and, as a result, the Plan suffered investment losses. *See Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). On both prudence and loyalty, Plaintiff faces significant risk and uncertainty. On prudence, this Court recognized that "the reasonable length of retention and sufficiency of monitoring processes are generally fact-specific determinations that defy bright line rules." Order on Summary Judgment, Dkt. 207, at 18 (citing *Tracey v. Mass. Inst. Tech.*, 404 F. Supp. 3d 356, 362 (D. Mass. 2019)). Loyalty claims, as this Court recognized, depend on "a subjective standard; what matters is **why** the defendant acted as [they] did." *Id.* at 20 (quoting *In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d 868, 875 (D. Minn. 2018) (emphasis in original)).

Plaintiff also would have to prove through expert testimony that the investment benchmarks or peer universes were in fact comparable to the Wells Fargo Target Fund Suite and that the underperformance analysis was not based on the benefit of pure hindsight. *See In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d at 823; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 724 (2d. Cir. 2013). If Plaintiff is unsuccessful on any of these points, the recovery to the Class could be diminished or lost all together.

Although Plaintiff believes there is strong support for the claims, there are significant risks inherent in any litigation. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 855

(E.D. Mo. 2005). Defendants vigorously contest liability and damages, and Plaintiff would still need to prevail at trial and on any appeal. This is not guaranteed, as illustrated in *Wildman v. Am. Cent. Services, LLC*, 362 F. Supp. 3d 685, 711 (W.D. Mo. 2019), where the Court held at trial that defendants did not breach the duty of prudence when it retained underperforming funds. *See also, e.g.*, *Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171, 184–85 (4th Cir. 2023) (affirming defense verdict at trial in an ERISA breach of fiduciary duty case).

Further, even if Plaintiff establishes a fiduciary breach, damages remain uncertain. *See Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (noting that the amount of damages depends on expert calculations); *see also Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement and noting that damage calculations are often a "battle of experts at trial, with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372, 1384 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) (holding that the difficulty in determining damages is a factor supporting settlement). Plaintiff anticipates that Defendants would actively work to diminish the weight of Plaintiff's experts, identify purported flaws in their methodologies, and advocate for their competing damage calculation with drastically reduced damages. Moreover, it is possible that damages could be significantly reduced through an adjustment to the period of liability. *See* Order on Summary Judgment, Dkt. 2017, at 16 (articulating different liability periods arising from questions raised under Plaintiff's duty of prudence claim).

Balanced against this is the $69 million proposed Settlement: the largest-ever ERISA settlement alleging breach of fiduciary duty for failure to remove underperforming

investment options. The proposed Settlement comprises 20.3% to 25% of potential damages, which is well within the range of settlement recoveries that have been approved in other ERISA class action settlements.[5] Weighed against these risks and uncertainties in liability and damages, the Settlement being a significant proportion of Plaintiff's expert's damage calculation weighs strongly in favor of approval.

### 2.      The Complexity, Expense, Risks, and Delay of Further Litigation Support Approval

"ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 (SRN/JSM), 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Moreover, claims of fiduciary breach under ERISA, even if ultimately successful, can drag on for a decade or more. *See, e.g.*, *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (remanding in part a judgment obtained at trial for a second time in a case filed in 2006); *Tibble v. Edison Int'l*, 575 U.S. 523, 531 (2015) (vacating judgment obtained at trial and remanding case filed in 2007). In complex cases such as this one, "'[t]he risks surrounding a trial on the merits are always considerable.'" *Beneli v. BCA Fin. Servs.*, 324 F.R.D. 89, 103–04 (D.N.J. 2018).

---

[5]     *See, e.g.*, *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1079–80 (D. Minn. 2009) (approving settlement amount of 16.2% of potential damages); *Becker v. Wells Fargo*, No. 0:20-CV-02016, 2022 WL 3909343 (KMM/BRT), at *4 (D. Minn. Aug. 31, 2022) (approving settlement amount of 23.9% of potential damages); *In re GE ERISA Litigation*, Case No. 1:17-cv-12123-IT (D. Mass. Mar. 8, 2024) (approving settlement amount of 21.5% of potential damages); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n,* No. 1:17-cv-00563-JMF, 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (approving settlement amount of 16% of potential damages); *Johnson v. Fujitsu Tech. & Bus. of America, Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at *5–6 (N.D. Cal. May 11, 2018) (collecting cases and approving settlement amount of 9.5% of potential damages).

Absent settlement, the Parties would expend significant time and resources preparing for trial. The trial in this case would likely take weeks, and would require testimony from several party, non-party, and expert witnesses on complex legal and factual issues, as demonstrated by the Parties' extensive summary judgment materials.

Even if Plaintiff were successful at trial, there is still a risk of reversal in whole or in part on appeal, as to liability and damages. *See Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *1 (W.D. Mo. Aug. 16, 2019). Even if not reversed on appeal, the case risks being tied up for years with post-trial appeals. *See Krueger*, 2015 WL 4246879, at *1 ("the Eighth Circuit Court of Appeals in [*Tussey*] remanded in part a judgment obtained by Class Counsel after trial, resulting in what will be additional litigation for a case first filed in 2006").

By contrast, the proposed Settlement avoids "the risk and delay inherent in prosecuting this matter through trial and appeal" and "can deliver a real and substantial remedy" to Class Members now. *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2016 WL 5394684, at *7 (D. Neb. Sept. 27, 2016). This factor also weighs strongly in favor of approval.

### 3. The Proposed Method of Distributing Relief to the Class Is Effective

The notice of a class action settlement "need only satisfy the 'broad "reasonableness" standards imposed by due process.'" *Petrovic*, 200 F.3d at 1153 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)). A proposed notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. (quoting *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950)). As discussed *supra* in Section IV.C and the Declaration of Steven Weisbrot, Esq. (Exhibit 4), the method of providing notice and the proposed claims administration process are effective. The notice plan includes direct email and mail notice to all those who can be identified with reasonable effort. In addition, toll-free telephone and email support will be provided, and a settlement-specific website will be created where key documents will be posted, including the Settlement Agreement, Notice, and Preliminary Approval Order. *See* Ex. 3, art. 3; Ex. 4.

In addition, the Parties developed neutral methods to apportion fairly the relief between Class Members. Plaintiff's expert, Mr. Witz, reviewed the Allocation Plan reflected in Article V of the Settlement Agreement and confirmed that this method of allocation was standard and equitable. Field Dec. ¶ 12. The distribution of the Net Settlement Fund to the Class is also effective as no claim form will be required. Using a settlement allocation scoring system, all Class Members will receive a *pro rata* share of the Settlement Fund based on their total investment amount in the Wells Fargo Target Funds and the relative quarterly performance of their holdings in the Wells Fargo Target Funds. *See* Ex. 3, ¶ 5.1; *see also Zilhaver v. UnitedHealth Group, Inc*., 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009) (finding allocation method reasonable where proceeds would be distributed in proportion to class members' calculated losses with a minimum recovery of $10). The Settlement Administrator shall distribute the Net Settlement Fund in

accordance with the Plan of Allocation which governs how Class Members' Entitlement Amount will be calculated. *See* Ex. 3, ¶ 5.2.

Current participants' awards will be deposited directly into their 401(k) accounts. *See* Ex. 3, ¶ 5.3. Former participants will receive direct payments by check but can elect to have their distributions rolled over into an eligible retirement account. *See id.* This is consistent with other settlements and will minimize taxes as well as inefficiencies resulting from uncashed checks. *See, e.g.*, *Dennard v. Transamerica Corp.*, No. 1:15-cv-00030 (N.D. Iowa May 20, 2016), Dkt. No. 86-1 at 42 (providing for rollover elections for former participants); *Moreno v. Deutsche Bank Americas Holding Corp*., No. 15-CV-09936 (S.D.N.Y. Aug. 14, 2018), Dkt. No. 321 at 8 (same); *In re G.E. ERISA Litig.*, No. 1:17-CV-12123-IT (D. Mass. Mar. 8, 2024), Dkt. 384 (same) .

### 4.    The Terms of the Proposed Award for Attorneys' Fees Present No Obstacle to Approval

Class Counsel's intention to file a motion for an award of attorneys' fees in an amount up to one-third (33 1/3%) of the Settlement Amount does not weigh against approval. To the contrary, this anticipated request is consistent with awards granted in other similar ERISA class action settlements. *See Krueger*, 2015 WL 4246879, at *2 (collecting cases and noting that "courts have consistently awarded one-third contingent fees").[6]

---

[6] *See also, e.g.*, *Khoday*, 2016 WL 1637039, at *1 (awarding 33 1/3% of $60 million recovery in consumer class action); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) (collecting cases and noting that "courts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this matter") (alteration in original); *Abbott v. Lockheed Martin Corp.*, No. 06–cv–701–MJR–DGW, 2015 WL 4398475, at *1–2 (S.D. Ill. July 17, 2015)

Accordingly, this factor is within an appropriate range for approval.

**D.    The Proposed Settlement Treats Class Members Equitably**

Per the Settlement Allocation Plan, Class Members will receive a *pro rata* share of the Settlement Amount that is proportional to the funds each Class Member invested in the Wells Fargo Target Fund Suite and the relative performance of the specific Wells Fargo Target Funds in which each Class Member's funds were invested. Courts typically find allocation methods reasonable when the proceeds are "distributed among class members in proportion to their calculated losses." *Zilhaver*, 646 F. Supp. 2d at 1080; *see also Fritton v. Taylor Corp.,* No. 22-CV-00415 (JBM/TNL), 2024 WL 3717351, at *3 (D. Minn. Aug. 8, 2024) (citing *Zilhaver*, 646 F. Supp. 2d at 1080). The allocation method certainly falls within the range of what is needed to establish that Class Members are treated equitably.

Any service award payment to Plaintiff would do nothing to change this factor as Class Representative's efforts will result in providing the Class with a cash recovery of $69,000,000 for the Class and the Plan. Under similar circumstances, this Court and others have authorized comparable service awards. *See, e.g.*, *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding

---

(33 1/3% of $62 million settlement) ("in ERISA 401(k) fee litigation, 'a one-third fee is consistent with the market rate'"); *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *1–2 (S.D. Ill. Mar. 31, 2016) (33 1/3% of $57 million ERISA settlement) (the "requested fee is well within reasonable levels for a case such as this one"); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) ("In numerous prior settlements of 401(k) fee cases, class counsel have been awarded one-third of the monetary recovery to the plans."); *In re G.E. ERISA Litig.*, No. 1:17-cv-12123-IT, Dkt. 385 (D. Mass. Mar. 8, 2024) (awarding class counsel one-third of the $61 million  recovery in attorneys' fees).

$100,000 in incentive awards to lead plaintiffs out of $8 million settlement in 2005, which would be worth approximately $161,000 today); *Kruger v. Lely N. Am., Inc.*, No. 020-CV-00629-KMM/DTS, 2023 WL 5665215, at *6 (D. Minn. Sept. 1, 2023) (awarding $135,000 in incentive awards to class representative group, including $50,000 individual award to one individual class representative, out of $64 million settlement); *In re G.E. ERISA Litigation*, No. 1:17-cv-12123-IT, Dkt. 385, at 3–4 (D. Mass. Mar. 8, 2024) (awarding $250,000 in incentive awards to class representative group out of $61 million settlement).

Public policy strongly supports incentive awards as recognition for a plaintiff's important service of participating in the suit and promoting class action settlements. Such awards compensate a plaintiff for the efforts and risks she has undertaken, without which no settlement would be possible. *See Tussey*, 850 F.3d at 962 (8th Cir. 2017); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Further, they provide an incentive for other employees to bring successful cases that vindicate the public's interest in having retirement funds prudently managed, particularly in cases such as this in which the Action is proceeding against the Class Representative's employer, thus creating particular professional and reputational risks.[7] "Courts routinely recognize and approve incentive awards for class representatives

---

[7] *See, e.g.*, *Cook*, 142 F.3d at 1016 ("Cook brought a suit that resulted in structural reforms to the Health & Welfare Fund as well as a cash recovery of more than $13 million. . . . Most significantly, the special master found that, in filing the suit, Cook reasonably feared workplace retaliation."); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (noting that incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action . . ."); *Abbott v. Lockheed Martin Corp.*, No. 06–cv–701–

and deponents. . . . Courts should consider actions plaintiff took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort plaintiff expended in pursuing litigation." *Kruger v. Lely*, 2023 WL 5665215, at *6 (internal citations omitted); *see also Zilhaver*, 646 F. Supp. 2d at 1085 ("Plaintiffs' counsel note Zilhaver and Linn were 'the only Plan participants to step forward and commence or intervene in this suit.'. . . As named plaintiffs, they bore the risks of counterclaim or collateral attack, and consulted with class counsel throughout the suit.").

Courts also have a separate independent ground for granting service awards to plaintiffs who recover funds for an ERISA plan. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) ("actions for breach of fiduciary duty" under ERISA § 502(a)(2) are "brought in a representative capacity on behalf of the plan as a whole."); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008) (ERISA describes "the 'plan' as the victim of any fiduciary breach and the recipient of any relief"). "It is a general rule in courts of equity that a trust fund which has been recovered or preserved through their intervention may be charged with the costs and expenses. . . incurred in that behalf." *United States v. Equitable Tr. Co. of N.Y.*, 283 U.S. 738, 744 (1931) (awarding plaintiff compensation "for his services," plus attorneys' fees and expenses, in suit to restore property to trust). Accordingly, equity permits the Court to compensate Plaintiff for her

---

MJR–DGW, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) ("each Plaintiff was willing to alienate their employer, longtime friends loyal to [the company] and current and future employers unlikely to embrace an employee who files an action against [her] employer").

service to the Plan, "which ERISA typically treats as a trust." *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011).

In this case, Plaintiff Kim Snyder took a leading, early, decided, and earnest part in representing the Class and advancing the case to this settlement stage. She was the sole representative of the Plan and of the Class, and so personally took on the reputational risk of failing. Ms. Snyder advocated for equity, reason, common sense, and justice, and her commitment to this case was the means of obtaining an outstanding outcome for the Plan and the Class: the largest settlement in the history of investment performance cases in an ERISA context. The anticipated service award request of $100,000, amounting to less than 0.15% of the Settlement Fund, is fair, reasonable, and appropriate considering the time and effort that Plaintiff has dedicated to prosecuting this Action on behalf of the Class and the particular risks undertaken by Plaintiff as the sole Class Representative.

### E.    The Remaining Factors Do Not Weigh Against Approval

As discussed *supra* in Section VI.C.1, "the merits of the plaintiff's case, weighed against the terms of the settlement" and "the complexity and expense of further litigation," weigh in favor of preliminary approval of the proposed Settlement. The remaining factors analyzed by courts in this district—"the defendant's financial condition" and "the amount of opposition to the settlement"—further support preliminary approval of the proposed Settlement.

First, there is no dispute that UnitedHealth Group has the financial ability to pay any judgment entered against it in this Action. However, though a defendant could "pay more than it is paying in this settlement, this fact, standing alone, does not render the

settlement inadequate." *Petrovic*, 200 F.3d at 1152. Moreover, "there is no indication that [United's] financial condition would prevent it from raising the settlement amount." *In re Wireless*, 396 F.3d at 933.

Second, there are no known objections to settlement at this stage. The factor of the amount of opposition to the Settlement is best addressed at the Final Approval Hearing when Class Members have received notice of the Settlement and have had an opportunity to object or raise concerns related to the Settlement.

## VII.   NOTICE TO THE CLASS

Rule 23(e)(1) also requires the court to "certify the class for purposes of judgment on the proposal" and to determine whether class notice is warranted. Here, the Court has already certified the Class and appointed Class Counsel and Class Representative. Dkt. 137. No facts have changed to disturb this ruling. Furthermore, the notice program set forth in the proposed Preliminary Approval Order and outlined in Article 3 of the Settlement Agreement satisfies all the requirements of Rule 23: it provides the best practicable notice under the circumstances and is reasonably calculated to reach substantially all members of the Class. Class Notices will be directly e-mailed and/or mailed to all Class Members and published on the Settlement website. The proposed Class Notice is clear, accurate, comprehensible, and satisfies due process. *See* Ex. A-1 to the Settlement Agreement (Proposed Class Notice). Furthermore, Class Counsel has hired a capable administrator, Angeion Group, with particularly deep experience in ERISA settlements, to serve as Settlement Administrator. *See* Declaration of Steven Weisbrot, Exhibit 4; *see also* Field Dec. ¶ 35.

## VIII.  CONCLUSION

The proposed Settlement easily satisfies the criteria for preliminary approval. The Court should grant this Motion, enter the attached Proposed Order, and direct Notice to the Class so that Class Members have an opportunity to weigh in on the fairness, reasonableness, and adequacy of the settlement. Then, the Court may proceed to consider whether the Settlement should receive final approval.


Dated: December 13, 2024                    /s/ *Charles H. Field*

Charles H. Field, CA Bar No. 189817*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
7911 Herschel Avenue, Suite 300
La Jolla, CA  92037
Telephone: (619) 577-4252
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

Leigh Anne St. Charles, TN Bar No. 36945*
Kevin H. Sharp, TN Bar No. 16287*
Brent Hannafan, TN Bar No. 25209*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Phone: (615) 434-7000
Facsimile: (615) 434-7020
lstcharles@sanfordheisler.com
ksharp@sanfordheisler.com
bhannafan@sanfordheisler.com

David Sanford, NY Bar No. 5695671*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
17 State Street, Suite 3700
New York, NY 10004
Phone: (646) 402-5656
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com

Susan M. Coler, MN Bar No. 0217621
**HALUNEN LAW**
1650 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
coler@halunenlaw.com

*Attorneys for Plaintiff and the Class*

* Admitted *pro hac vice*