# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

KIM SNYDER, on behalf of herself and all others similarly situated,

Plaintiff,

v.

UNITEDHEALTH GROUP, INC., et al.

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 0:21-cv-01049 (JRT/DJF)

<u>CLASS ACTION</u>

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CLASS SERVICE AWARD

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... I

TABLE OF AUTHORITIES .............................................................................. II

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................... 2

    A.    Procedural History .................................................................... 2

    B.    Negotiations and Settlement ...................................................... 5

    C.    Additional Work to Be Performed ............................................. 6

III.    THE REQUESTED FEE AWARD IS FAIR AND REASONABLE ..................... 7

    A.    Legal Standard .......................................................................... 7

    B.    All Factors Support Class Counsel's Fee Request ...................... 8

        1.    The Settlement Substantially Benefits the Class ............... 8

        2.    Class Counsel Undertook Significant Risk ..................... 10

        3.    This Case Presents Complex Factual and Legal Issues ................. 13

        4.    Class Counsel Are Skilled Practitioners ......................... 13

        5.    Class Counsel Spent Considerable Time and Effort Litigating this Case ................................................................... 15

        6.    To Date, The Parties Have Received Only Two Class Member Letters Related to the Settlement ...................................... 16

        7.    The Percentage Requested Is Consistent with Fee Awards in Similar Cases ............................................................... 17

    C.    A Lodestar Cross-Check Confirms that a One-Third Fee Is Reasonable ... 18

IV.     THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES ...................................... 21

V.      THE COURT SHOULD APPROVE A SERVICE AWARD OF $50,000 ........... 23

    A.    Legal Standard ........................................................................ 25

    B.    Plaintiff Provided Substantial Services to the Class Members and the Plan .................................................................................. 26

    C.    The Requested Service Award Is Comparable to Those in Other Class Actions ................................................................................... 28

VI.     CONCLUSION ................................................................................. 29

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Lockheed Martin Corp.*,
No. 06-cv-701, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ................................. 27

*Allen v. Wells Fargo & Co.*,
967 F.3d 767 (8th Cir. 2020) ................................................................................. 16

*Barrett v. Forest Labs., Inc.*,
No. 1:12-cv-05224 (S.D.N.Y. June 29, 2018) ....................................................... 30

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
No. 1:17-cv-00563-JMF, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ................ 12

*Becker v. Wells Fargo*,
No. 0:20-CV-02016 (KMM/BRT), 2022 WL 3909343 (D. Minn. Aug. 31, 2022)
................................................................................................................................ 11

*Beesley v. Int'l Paper Co.*,
No. 3:06-cv-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ......... 27, 38

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020) ........................................................ 20, 21, 29

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
No. 1:15-cv-02062, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .................. 32, 42

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................. 1

*Bonime v. Doyle*,
416 F. Supp. 1372 (S.D.N.Y. 1976) ...................................................................... 17

*Bonime v. Doyle*,
556 F.2d 554 (2d Cir. 1977) .................................................................................. 17

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014) .............................................................................. 14

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ................................................................................. 15

*Brewer v. Molina Healthcare, Inc.*,
No. 1:16-CV-09523, 2018 WL 2966956 (N.D. Ill. June 12, 2016) ...................... 38

*Caligiuri v. Symantec Corp.*,
855 F.3d 860 (8th Cir. 2017) ................................................................................. 14

*Carlson v. C.H. Robinson Worldwide, Inc.*,
No. 02-cv-3780, 2006 WL 2671105 (D. Minn. Sept. 18, 2006) ...................... 3, 26

*Chen v. W. Digit. Corp.*,
    8:19-cv-00909-JLS-DFM, 2021 WL 9720778 (C.D. Cal. Jan. 5, 2021) .............. 30

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ...................................................... 34, 39, 42

*Dennard v. Transamerica Corp.*,
    No. 15-cv-00030, 2016 WL 6471254 (N.D. Iowa Oct. 28, 2016) ................... 2, 25

*Doyle v. Guardian Mgmt., S. A.*,
    556 F.2d 555 (2d Cir. 1977) ................................................................ 17

*Florin v. Nationsbank of Ga., N.A.*,
    60 F.3d 1245 (7th Cir. 1995) ............................................................... 14

*Ha v. Google Inc.*,
    No. 116-290847, 2018 WL 1052448 (Cal. Super. Feb. 7, 2018) ...................... 30

*Hans v. Tharaldson*,
    No. 3:05-cv-0115, 2013 WL 12253179 (D.N.D. Feb. 25, 2013) ...................... 33

*Huyer v. Buckley*,
    849 F.3d 395 (8th Cir. 2017) ............................................................... 26

*In re Airline Ticket Comm'n Antitrust Litig.*,
    953 F. Supp. 280 (D. Minn. 1997) ........................................................ 25

*In re Anthem, Inc. Data Breach Litigation*,
    2018 WL 3960068 (N.D. Cal. 2018) ...................................................... 37

*In re Cendant Corp., Derivative Action Litigation*,
    232 F. Supp. 2d 327 (D.N.J. 2002) ....................................................... 36

*In re Colgate-Palmolive*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014) ...................................................... 29

*In re Dell Technologies Inc. Class v. Stockholders Litig.*,
    300 A.3d 679 (Del. Ch. 2023) ............................................................. 37

*In re E.W. Blanch Holdings, Inc. Securities Litig.*,
    No. 01-258, 2003 WL 23335319 (D. Minn. June 16, 2003) ........................... 25

*In re Emp. Ben. Plans Sec. Litig.*,
    No. CIV. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ........................ 3

*In re GE ERISA Litig.*,
    Case No. 1:17-cv-12123-IT (D. Mass. Mar. 8, 2024) ........................ 12, 26, 29

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
    No. 10-cv-4038, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) ........... 2, 26, 31, 32

*In re McLeodUSA Inc. Sec. Litig.*,
    No. 02-cv-001, 2007 WL 81956 (N.D. Iowa Jan. 8, 2007) ........................... 33

*In re Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ............................................................................ 17

*In re Pork Antitrust Litig.*,
    No. CV 18-1776 (JRT/JFD), 2023 WL 11892593 (D. Minn. Apr. 11, 2023) ... 1, 10

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2022) ........................................................................ passim

*In re UnumProvident Corp. Derivative Litig.*,
    No. 1:02-CV-386, 2010 WL 289179 (E.D. Tenn. Jan. 20, 2010) ......................... 37

*In re Wells Fargo ERISA 401(k) Litig.*,
    331 F. Supp. 3d 868 (D. Minn. 2018) ................................................................. 16

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ................................................. 10, 11, 14, 24

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    No. 16-cv-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) .................. 12

*Johnston v. Comerica Mortg. Corp.*,
    83 F.3d 241 (8th Cir. 1996). ................................................................................. 9

*Karg v. Transamerica Corp.*,
    No. 1:18-cv-00134-CJW-KEM, 2021 WL 9440635 (N.D. Iowa Nov. 22, 2021) . 23

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) ............................................................................. 28

*Khoday v. Symantec Corp.*,
    No. 11-CV-180 (JRT/TNL), 2016 WL 1626836 (D. Minn. Apr. 22, 2016) .......... 13

*Khoday v. Symantec Corp.*,
    No. 11-CV-180 (JRT/TNL), 2016 WL 1637039 (D. Minn. Apr. 5, 2016) ........... 13

*Krueger v. Ameriprise Fin., Inc.*,
    No. 11-CV-02781 (SRN/JSM), 2015 WL 4246879 (D. Minn. July 13, 2015)
    ..................................................................................................................... passim

*Kruger v. Lely N. Am., Inc.*,
    No. 020-CV-00629-KMM/DTS, 2023 WL 5665215 (D. Minn. Sept. 1, 2023) .... 41

*Kruger v. Novant Health, Inc.*,
    No. 1:14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .................. 21, 27

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) .......................................................................................... 35

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ............................................................................. 15

*Marshall v. Nat'l Football League*,
    787 F.3d 502 (8th Cir. 2015) ............................................................................. 16

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ....................................................................... 35

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ........................................................... 18

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*,
    712 F.3d 705 (2d Cir. 2013) ............................................................ 17

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ............................................... 9, 10, 28

*Pizarro v. Home Depot, Inc.*,
    111 F.4th 1165 (11th Cir. 2024) ...................................................... 18

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
    74 F.4th 171 (4th Cir. 2023) ............................................................ 15

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ............................................................ 15

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................... 42

*Roeser v. Best Buy Co.*,
    No. CIV. 13-1968 JRT/HB, 2015 WL 4094052 (D. Minn. July 7, 2015) .............. 9

*Rollins v. Dignity Health*,
    No. 13-CV-01450-JST, 2022 WL 20184568 (N.D. Cal. July 15, 2022) .............. 37

*Savani v. URS Pro. Sols. LLC*,
    121 F. Supp. 3d 564 (D.S.C. 2015) .................................................. 20

*Schaff v. Chateau Cmty., Inc.*,
    No. 19-CX-03-6402, 2004 WL 1908209 (Minn. Dist. Ct. May 27, 2004) ........... 36

*Schaff v. Chateau Cmty., Inc.*,
    No. A04-1246, 2005 WL 1734031 (Minn. Ct. App. July 26, 2005) ................... 36

*Short v. Brown Univ.*,
    No. 17-cv-00318 (D.R.I. Aug. 2, 2019) ............................................ 26

*Sims v. BB&T Corp.*,
    Nos. 1:15-CV-732, 1:15-CV-841, 2019 WL 1993519 (M.D.N.C. May 6, 2019) . 27

*Spano v. Boeing Co.*,
    No. 06-cv-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ...................... 27

*Tatum v. RJR Pension Inv. Comm.*,
    761 F.3d 346 (4th Cir. 2014) ........................................................... 16

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015) ....................................................................... 19

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ................................................................... 15

*Tussey v. ABB, Inc.*,
    850 F.3d 951 (8th Cir. 2017) ............................................................ 19, 42

*Tussey v. ABB, Inc.*,
    No. 06-cv-04305, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ................. passim

*United States v. Equitable Tr. Co. of N.Y.*,
    283 U.S. 738 (1931) ........................................................................... 35

*Wellens et al. v. Daiichi Sankyo, Inc.*,
    Case No. 13-cv-00581 (N.D. Cal. Feb. 11, 2016) ..................................... 29

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019) ................................................... 16

*Will v. Gen. Dynamics Corp.*,
    No. 06-cv-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ..................... 27

*Wineland v. Casey's Gen. Stores, Inc.*,
    267 F.R.D. 669 (S.D. Iowa 2009) ........................................................ 34

*Yarrington v. Solvay Pharms., Inc.*,
    697 F. Supp. 2d 1057 (D. Minn. 2010) ........................................... 23, 31

*Zilhaver v. UnitedHealth Grp., Inc.*,
    646 F. Supp. 2d 1075 (D. Minn. 2009) ............................................ passim

## OTHER AUTHORITIES

29 U.S.C. § 1104 ...................................................................................... 2

## CONSTITUTIONAL PROVISIONS

5 Newberg on Class Actions § 17:4 ............................................................ 23

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Studies 27 (2004)................................ 17

## RULES

Fed. R. Civ. P. 23(e) .................................................................................. 23

Fed. R. Civ. P. 23(h)(1) ................................................................................ 2

Fed. R. Civ. P. 54(d)(2) ................................................................................ 2

## I.    INTRODUCTION

Plaintiff and Class Representative Kim Snyder has obtained an outstanding result in this class action under the Employee Retirement Income Security Act of 1974 ("ERISA"). After years of investigation, litigation, mediation, and negotiation, Plaintiff has secured a $69 million Settlement Fund for the UnitedHealth Group 401(k) Savings Plan (the "Plan") to be distributed to the Class of Plan Participants who invested in the challenged Wells Fargo Target Fund Suite. This Court has preliminarily approved the Settlement. Dkt. 236. This benefit was generated through years of effort by Class Counsel and the sole Class Representative, Plaintiff Kim Snyder.

Under the "common fund" doctrine, class counsel who have obtained a recovery for the benefit of a class are entitled to an award of reasonable attorneys' fees from the Settlement proceeds. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts in the Eighth Circuit and this District have frequently awarded attorneys' fees of 33 1/3% or more of a common fund in class actions such as this. *See, e.g.*, *In re Pork Antitrust Litig.*, No. CV 18-1776 (JRT/JFD), 2023 WL 11892593, at *1 (D. Minn. Apr. 11, 2023) (Tunheim, J.) (awarding 33.3% of the common fund); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2022) (upholding an award of 36% of settlement fund); *Tussey v. ABB, Inc.*, No. 06-cv-04305, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) ("*Tussey I*") (awarding 33 1/3% of the common fund); *Dennard v. Transamerica Corp.*, No. 15-cv-00030, 2016 WL 6471254, at *1 (N.D. Iowa Oct. 28, 2016) (awarding 33 1/3% of the common fund); *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 (SRN/JSM), 2015 WL 4246879, at *1–3 (D. Minn. July 13, 2015) (awarding 33 1/3% of the common fund); *In re Iowa Ready-*

*Mix Concrete Antitrust Litig.*, No. 10-cv-4038, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011) (awarding 36% of the common fund); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-cv-3780, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (awarding 35.5% of the common fund); *In re Emp. Ben. Plans Sec. Litig.*, No. CIV. 3-92-708, 1993 WL 330595, at *7 (D. Minn. June 2, 1993) (awarding 33 1/3% of the common fund).

Likewise, in "ERISA class actions asserting breaches of fiduciary duties in the selection and retention of plan investment options" such as this, "courts have consistently awarded one-third contingent fees." *Krueger*, 2015 WL 4246879, at *2 (collecting cases).

Accordingly, pursuant to Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2), Plaintiff and Class Representative Kim Snyder now petitions this Court for an award of attorneys' fees of $23 million (one-third of the total value of the settlement), reimbursement of $735,162.97 in costs and expenses incurred by Class Counsel, and a service award of $50,000 for Ms. Snyder as the sole Class Representative.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff filed this action on April 23, 2021. Dkt. 1. Plaintiff's Complaint alleged that Defendants were fiduciaries of the UnitedHealth Group 401(k) Savings Plan and breached their fiduciary duties under ERISA, 29 U.S.C. § 1104(a), by retaining a suite of imprudent target date funds (the Wells Fargo Target Fund Suite). Dkt. 1 ¶¶ 132–43.

Plaintiff's complaint was the product of Class Counsel's extensive and thorough investigation of the legal claims and factual issues, which began months before filing the Complaint. This lengthy investigation process encompassed, *inter alia*: (1) examining Plan

2

documents and participant disclosures; (2) analyzing Department of Labor filings from the Plan and Wells Fargo to quantify assets under the Plan's management; (3) assessing the investment structure and objectives of the Plan's investment options based upon filings made with the Securities and Exchange Commission ("SEC"); (4) reviewing SEC filings of Wells Fargo and its affiliated investment entities; (5) identifying appropriate benchmarks and comparator funds; (6) calculating the 10-year performance of the Plan's investment options relative to the selected benchmarks and comparator funds; (7) ascertaining potential injury to the Plan; and (8) conducting legal research. Declaration of Charles H. Field, Exhibit 1 ("Field Decl.") ¶ 5.

After commencing this action and throughout the litigation, Class Counsel prosecuted the case vigorously and effectively, with meaningful assistance from Local Counsel. On June 23, 2021, Defendants moved to dismiss the initial Complaint or, in the alternative, for summary judgment. Dkt. 40. After full briefing on both the motion to dismiss and the alternative motion for summary judgment, the Court held oral arguments and then denied both of Defendants' motions. Dkt. 96. Following this, the Court certified the Class and appointed Sanford Heisler Sharp, LLP as Class Counsel on February 2, 2022. Dkt. 109.

Discovery in this litigation was significant. Class Counsel engaged in extensive written discovery, served over sixty written discovery requests, and reviewed over 84,000 pages of documents produced by Defendants. Field Decl. ¶ 6. After reviewing the substantially complete document production of Defendants, Class Counsel filed an Amended Class Complaint on August 24, 2022, which named one additional defendant,

withdrew a previously named defendant, and added claims against all Defendants. Dkt.
119. Class Counsel took thirteen depositions of Defendants and their agents, and defended
the deposition of Plaintiff Kim Snyder. Field Decl. ¶ 6. Class Counsel also pursued critical
third-party discovery, serving subpoenas on the outside consultant to the Plan, the fund
provider Wells Fargo Asset Management, and its parent company Wells Fargo. Class
Counsel reviewed over 35,000 pages of documents from those third parties and deposed
two agents of the Plan's consultant. *Id.*

Fact discovery ended in May 2023, Dkt. 141, after which the Parties engaged in
expert discovery. Class Counsel designated two experts with extensive industry experience
to opine on the fiduciary standard of care under a prudent and loyal process and the alleged
injury to the Plan resulting from Defendants' decision to retain the challenged funds. *See*
Field Decl. ¶¶ 7–10. The Parties exchanged initial expert reports and rebuttal expert reports
before conducting depositions of each expert. *See* Dkt. 85; Dkt. 122; Dkt. 136; Field Decl.
¶ 6.

On August 11, 2023, Defendants moved for summary judgment on all claims. Dkt.
168. The Parties fully briefed this motion, filing a combined total of 236 exhibits, then
presented oral argument before this Court on February 6, 2024. Dkts. 168–193-2. On
March 12, 2024, the Court issued an order substantially denying Defendants' motion for
summary judgment: the Court granted summary judgment only as to Plaintiff's claim for
failure to adhere to Plan documents (Count II) and the inclusion of United's Board of
Directors as defendants, while denying summary judgment as to all other claims. *See* Dkt.
207. The Court advised that this case would be placed on the Court's next available trial

date and instructed the Parties to engage in alternative dispute resolution. *See* Dkts. 207, 208.

### B.    Negotiations and Settlement

Following the substantial completion of Defendants' document production, the Parties first attempted mediation in July 2022 with an independent mediator. Field Decl. ¶ 11. The mediation was unsuccessful, and the Parties continued forward with fact and then expert discovery. *See id.* After completing fact discovery and exchanging initial and rebuttal expert reports, in June 2023, the Parties participated in a court-ordered settlement conference before Magistrate Judge Dulce J. Foster, but again did not resolve the case. *Id.*

The Parties made a third effort to resolve the case after the Court's Order substantially denying summary judgment. On July 18, 2024, the Parties engaged in a day-long mediation before a JAMS mediator, Robert A. Meyer, who is experienced in the mediation of complex civil cases including ERISA class actions. Field Decl. ¶ 12. After extensive mediation briefing and negotiations, the Parties failed to reach a settlement at the mediation, but they continued to negotiate for weeks through Mr. Meyer. *Id.* On September 17, 2024, the Parties reached a settlement in principle, which was the result of a proposal by Mr. Meyer. *See* Dkt. 223; Field Decl. ¶ 13. After five months of rigorous negotiations (from July to December 2024), the Parties finalized the Settlement for $69 million on December 11, 2024. Dkt. 234-4. The Court granted preliminary approval of the Settlement on January 24, 2025. Dkt. 236.

Pursuant to the Court's Order, the Settlement Administrator published a Settlement website and disseminated Notice to approximately 322,466 Class members via email, and

approximately 31,307 Class Members via mail, as of May 30, 2025. Field Decl. ¶ 16 & n.1. The proposed fees, costs, and service award requested herein were described in the Class Notice, though Plaintiff is seeking a service award lower than the amount described in the Class Notice. *See* Dkt. 236-1. To date, no Class Members have filed objections to the Settlement amount, the proposed attorneys' fee award, the reimbursement of litigation costs and expenses, or the proposed service award to Class Representative, Kim Snyder. Field Decl. ¶ 16. The Parties did receive two letters from class members "requesting [that] Age-Weighted distribution be taken into consider[ation] along with the current proposed Calculation of payments to individual Class Members." *Id.* [1]

### C.    Additional Work to Be Performed

All the efforts described above were required to successfully position the case so that the Class Members will receive the monetary and non-monetary benefits of the Settlement. But Class Counsel's work on this matter is not yet complete. Class Counsel still needs to prepare for and attend the Fairness Hearing and, if necessary, respond to any objections. Field Decl. ¶ 17. If final approval is granted, Class Counsel will supervise the distribution of the net Settlement Amount to eligible Class Members. *Id*. In addition, Class Counsel will continue to assist the Settlement Administrator in responding to questions from Class Members and take other actions necessary to support the Settlement until the conclusion of the Settlement Period. *Id*.

---

[1] Plaintiff's reply to these class member letters is attached as Exhibit 4 to this memorandum.

## III.    THE REQUESTED FEE AWARD IS FAIR AND REASONABLE

Class Counsel's requested fee award of $23 million, equal to one-third of the total value of the Settlement, is fair and reasonable under the seven-factor approach adopted by District Courts within the Eighth Circuit and comports with fee awards in similar cases in other Circuits. A lodestar cross-check analysis confirms that Class Counsel's requested fee is reasonable in light of the hours expended.

### A.    Legal Standard

"Under the 'common-fund' doctrine, class counsel is entitled to a reasonable fee drawn from the commonly-held fund created by a settlement for the benefit of a class." *Krueger*, 2015 WL 4246879, at *1. "Courts utilize two main approaches to analyzing a request for attorney fees"—the "lodestar" approach and the "percentage of the benefit" approach. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "It is within the discretion of the district court to choose which method to apply." *Id.* at 246.

Typically, "[t]he percentage-of-the-benefit method is used 'to evaluate attorneys' fees in a common-fund settlement.'" *Roeser v. Best Buy Co.*, No. CIV. 13-1968 JRT/HB, 2015 WL 4094052, at *8 (D. Minn. July 7, 2015) (Tunheim, J.) (quoting *In re U.S. Bancorp Litig.*, 291 F.3d at 1038); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Tussey I*, 2019 WL 3859763, at *2. "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic*, 200 F.3d at 1157).

"When using the percentage-of-the-fund approach, the Court considers seven factors: (1) the benefit to the class; (2) the difficulty and novelty of the litigation; (3) the risks to plaintiffs' counsel; (4) the time and labor involved to bring the litigation; (5) the skill and experience of the attorneys representing the parties; (6) the reactions of class members; *and* (7) whether the award is consistent with awards in other cases." *In re Pork Antitrust Litig.*, 2023 WL 11892593, at *1 (citation omitted); *see also Tussey I*, 2019 WL 3859763, at *2; *Krueger*, 2015 WL 4246879, at *1 (considering seven factors listed); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1082–83 (D. Minn. 2009) (same); *In re Xcel Energy*, 364 F. Supp. 2d at 992–93 (same). Each factor supports Class Counsel's request.

### B.    All Factors Support Class Counsel's Fee Request

#### 1.    The Settlement Substantially Benefits the Class

Counsel has obtained a significant monetary recovery for the Class. The $69 million Settlement constitutes the largest-ever ERISA settlement alleging breach of fiduciary duty for failure to remove underperforming investment options. The proposed Settlement comprises 20.3% to 25% of potential damages,[2] which is well within the range of settlement recoveries that have been approved in other ERISA class action settlements.

---

[2] These percentages are based on damages calculated by Plaintiff's expert for the full Class Period relative to the Morningstar Lifetime Moderate Target Date Indices and the S&P Target Date Indices, two widely accepted target date fund peer universes apart from the Plan-specific comparators challenged by Defendants' expert. Through this calculation method, potential damages range from approximately $276.1 million relative to the Morningstar Lifetime Moderate Target Date Indices to $339.8 million relative to the S&P Target Date Indices. *See* Rebuttal Expert Report of David J. Witz, Dkt. 179-4 ¶ 16.

*See, e.g., Zilhaver*, 646 F. Supp. 2d at 1079–80 (approving settlement amount of 16.2% of potential damages); *Becker v. Wells Fargo*, No. 0:20-CV-02016 (KMM/BRT), 2022 WL 3909343, at *3 (D. Minn. Aug. 31, 2022) (approving settlement amount of 23.9% of maximum potential damages); *In re GE ERISA Litig.*, Case No. 1:17-cv-12123-IT (D. Mass. Mar. 8, 2024) (approving settlement amount of 21.5% of potential damages); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 1:17-cv-00563-JMF, 2020 WL 6114545, at *l (S.D.N.Y. Oct. 7, 2020) (approving settlement amount of 16% of potential damages); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at *5–6 (N.D. Cal. May 11, 2018) (collecting cases and approving settlement amount of 9.5% of potential damages).

The Parties have also developed neutral methods to fairly and effectively apportion the monetary relief among Class Members. All Class Members will receive a *pro rata* share of the Settlement Fund based on their total investment amount in the Wells Fargo Target Funds and the relative quarterly performance of their holdings in the Wells Fargo Target Funds, with a minimum payable recovery of $10 for each Class Member. Class Counsel's damages expert has confirmed that this method of allocation is standard and equitable. Field Decl. ¶ 9; *see also Zilhaver*, 646 F. Supp. 2d at 1080 (holding that allocation distributing proceeds in proportion to class members' calculated losses with a minimum recovery of $10 was reasonable).

The Settlement provides additional benefit by offering the option of tax-deferred payment method: Current Plan participants will receive distributions directly into their Plan account tax-deferred, while former participants have the option to direct their distributions

into a tax-deferred vehicle if preferred. Dkt. 234-4, ¶¶ 5.3–5.4. Consequently, "the actual value to the class for the monetary part of the settlement is more than [$69] million." *See Tussey I*, 2019 WL 3859763, at *2.

This $69 million Settlement, especially when "weighed against the inherent risks of trial" and lengthy appeal, "provides a substantial and immediate benefit to the class." *Khoday v. Symantec Corp.*, No. 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *9 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016) (Tunheim, J.), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017). The substantial benefit to the Class weighs strongly in favor of the requested fee.

### 2. Class Counsel Undertook Significant Risk

"The risks plaintiffs' counsel faced must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day," and "[c]ourts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Xcel Energy*, 364 F. Supp. 2d at 994. That risk was substantial from the outset of the case.

To start, this type of ERISA litigation involves substantial risk of defeat: "Plaintiffs claiming a breach of fiduciary duty do not often succeed." *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1248 (7th Cir. 1995) (citation omitted); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 466 (D. Md. 2014) ("[n]umerous courts have emphasized the many hurdles plaintiffs must clear to succeed" on a claim for imprudence under ERISA).

To prevail, Plaintiff must establish fiduciary breach under ERISA—no small feat considering the deference often paid to fiduciary decisions. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009); *Loomis v. Exelon Corp.*, 658 F.3d 667, 670–74 (7th Cir. 2011); *Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171, 184–85 (4th Cir. 2023); *Renfro v. Unisys Corp.*, 671 F.3d 314, 325–28 (3d Cir. 2011). From there, causation and the proper measure of damages present unsettled and hotly contested legal issues. *See, e.g.*, *Tussey v. ABB, Inc.*, 746 F.3d 327, 338–39 (8th Cir. 2014) ("*Tussey II*") (remanding with instruction for the district court to "reevaluate its method of calculating the damage award" and deeming the damages award "speculative"); *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (noting that the amount of damages depends on expert calculations); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 364 (4th Cir. 2014) (dispute over causation standard); *In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d 868, 873 (D. Minn. 2018) (explaining that "this Court characterized this more-harm-than-good standard as 'very tough'"), *aff'd sub nom. Allen v. Wells Fargo & Co.*, 967 F.3d 767 (8th Cir. 2020); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 711 (W.D. Mo. 2019) (articulating shortcomings in Plaintiffs' expert's models for calculating losses to the Plan); *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 724 (2d Cir. 2013) (articulating weaknesses in Plaintiffs' arguments related to fiduciaries' failure to diversify the Plan Portfolio); *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (noting that damage calculations are often a "battle of experts at trial, with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372, 1384 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir.

1977), and *aff'd sub nom. Doyle v. Guardian Mgmt., S. A.*, 556 F.2d 555 (2d Cir. 1977) (holding that the difficulty in determining damages is a factor supporting settlement). If Plaintiff was unsuccessful on any points, recovery could be significantly reduced or denied altogether.

Here, Plaintiff's claims faced particular risk in challenging the prudence of retaining a target date fund. Courts, including the Eighth Circuit, have rejected efforts to draw comparisons from among peer target date funds and market benchmarks. *See*, *e.g.*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 & n.2 (8th Cir. 2018) (rejecting such a comparison due to certain differences in funds); *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1180 (11th Cir. 2024). Plaintiff anticipates that Defendants would engage in extensive efforts to diminish the weight of Plaintiff's experts, identify purported flaws in their methodologies, limit the time period for damages,[3] and advocate for their competing damages calculation with drastically reduced damages.

Even if Plaintiff were successful at trial, there is still a risk of reversal on appeal, in whole or in part, as to liability and damages. *See Tussey I*, 2019 WL 3859763, at *1. If not reversed on appeal, the case still risks being tied up for years with post-trial appeals. *See Krueger*, 2015 WL 4246879, at *1 (recognizing the risk of lengthy litigation post-trial in comparable ERISA class action). Indeed, claims of fiduciary breach under ERISA can drag on for a decade or more. *See, e.g.*, *Tussey v. ABB, Inc.*, 850 F.3d 951, 962 (8th Cir. 2017)

---

[3] *See* Order on Summary Judgment, Dkt. 207, at 16 (articulating different liability time periods under Plaintiff's prudence claim).

("*Tussey III*") (remanding in part a judgment obtained at trial for a second time in a case filed in 2006); *Tibble v. Edison Int'l*, 575 U.S. 523, 531 (2015) (vacating judgment obtained at trial and remanding case filed in 2007).

Despite these uncertainties regarding the outcome of the case, Class Counsel took the case on a wholly contingent basis and devoted thousands of hours and out-of-pocket dollars to the case. If the risks undertaken by Class Counsel in this matter are not "compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this." *Tussey I*, 2019 WL 3859763, at *3.

### 3.    This Case Presents Complex Factual and Legal Issues

"ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger*, 2015 WL 4246879, at *1. In particular, "ERISA 401(k) fiduciary breach class actions are extremely complex and require a willingness to risk significant resources in time and money, given the uncertainty of recovery and the protracted and sharply-contested nature of ERISA litigation." *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 269 (S.D.N.Y. 2020).

Here, the complicated and novel "factor-enhanced" investment strategies underlying the funds only magnified the inherent complexity of this ERISA 401(k) class action. The complex factual and legal issues further support the requested fee.

### 4.    Class Counsel Are Skilled Practitioners

Handling a case of this complexity requires counsel with specialized skills. *See Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 573 (D.S.C. 2015) (noting that "[v]ery

13

few plaintiffs' firms possess the skill set or requisite knowledge base to litigate . . . class-wide, statutorily-based claims for pension benefits."). Counsel in ERISA class actions such as this one "must be knowledgeable about this complex and developing area of law, aware of numerous merits and procedural pitfalls, willing to risk dismissal at any stage, and prepared to pursue many years of litigation." *Bekker*, 504 F. Supp. 3d at 270. In addition, they must have "expertise regarding industry practices" and be able to analyze pertinent records and data. *See Kruger v. Novant Health, Inc.*, No. 1:14-cv-208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016).

Lead Class Counsel, Sanford Heisler Sharp McKnight, LLP ("Sanford Heisler," or "the Firm"), is a preeminent nationwide plaintiffs' firm specializing in complex class litigation. The firm has served as lead or co-lead counsel in scores of class and collective actions and in cases brought in most states of the country, including several other ERISA class actions. *See* Field Decl. ¶ 51. The team has been led by the Co-Chairs of the firm's Financial Mismanagement and ERISA Litigation Practice Group: Charles Field, who has decades of experience in the financial services industry, and Leigh Anne St. Charles, Managing Partner of the Firm's Nashville Office, both of whom have served as class counsel in multiple ERISA actions. *See id.* ¶¶ 18–32. Field and St. Charles were assisted by a team of other highly qualified attorneys and legal assistants, who collectively devoted approximately 12,802 hours to prosecuting this matter. *Id.* ¶¶ 62–63. Local Counsel likewise has a distinguished record of success in class actions. Declaration of Susan M. Coler, Exhibit 2 ("Coler Decl.") ¶¶ 6–10.

This case was hotly contested throughout, and the resolution reflects Class Counsel's skill and experience. Class Counsel successfully opposed Defendants' motion to dismiss and two motions for summary judgment; developed the case through extensive discovery, including the review and analysis of 119,000 pages of complex documents; retained two highly qualified experts; and persisted through three separate attempts at mediation and months of subsequent, arm's-length negotiation. Field Decl. ¶¶ 6–14.

In sum, Class Counsel deployed its expertise to effectively investigate, litigate, and settle this difficult matter despite its legal and factual complexities. And, as noted above, their work is not done.

## 5. Class Counsel Spent Considerable Time and Effort Litigating this Case

Since 2021, Class Counsel has been investigating, litigating, and then negotiating a resolution in this case. Field Decl. ¶ 4. As of June 3, 2025, lawyers and staff at Sanford Heisler have expended approximately 12,802 hours in prosecuting this action on behalf of the Class. *Id.* ¶¶ 62–63. A breakdown of these hours by attorney level is attached. *See id.* Local Counsel and staff at Halunen Law have expended approximately 181 hours working on behalf of the Class. Coler Decl. ¶¶ 13–14.

Class Counsel has exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class. The number of hours expended by Class Counsel exceeds other cases in which District Courts within the Eighth Circuit have granted a one-third attorneys' fees award. *See, e.g.*, *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (awarding 33 1/3% where class counsel had

spent 5,453.5 hours on a consumer class action); *Karg v. Transamerica Corp.*, No. 1:18-cv-00134-CJW-KEM, 2021 WL 9440635, at *2 (N.D. Iowa Nov. 22, 2021) (awarding 33 1/3% where class counsel Sanford Heisler had spent nearly 5,300 hours on ERISA class action).

### 6.    To Date, The Parties Have Received Only Two Class Member Letters Related to the Settlement

The Settlement Notice, which was approved by this Court and disseminated to all Class members pursuant to this Court's Order, advised Class Members of the attorney fees and service award that Class Counsel intended to seek and the deadline to submit objections to the Settlement: May 29, 2025, fourteen days before the Fairness Hearing on June 12, 2025. *See* Dkt. 236, ¶¶ 3, 9. To date, the Settlement Administrator has received 1,889 phone calls from Class Members with questions about the settlement, but has not received any objections to the settlement amount, the proposed attorneys' fee award, the reimbursement of litigation costs and expenses, or the proposed service award to Class Representative, Kim Snyder. Supplemental Declaration of Kevin Flynn, Exhibit 3, ¶¶ 10–11. Only two class members have filed letters with the Court, both of which address only the plan of allocation. Dkts. 238, 239. Specifically, both request that the Court consider an "Age-Weighted distribution" plan "along with the current proposed Calculation of payments to individual Class Members."

The limited scope and number—two out of 350,000+ Class Members—of these objection letters, neither of which object to the settlement amount or proposed attorneys' fees and expenses, supports approval of Class Counsel's fee request. *See Krueger*, 2015

WL 4246879, at *2 ("This Court finds the lack of any objections to be a sign of the Class's support for Class Counsel's Application."); *In re Xcel Energy*, 364 F. Supp. 2d at 1002 ("No member of the ERISA class objected to . . . the request for attorney fees . . . This silence can be read as an endorsement of the results received and the services rendered by plaintiffs' counsel.").

### 7.    The Percentage Requested Is Consistent with Fee Awards in Similar Cases

Class Counsel's fee request of one-third of the total value of the Settlement is in line with fee awards in both common fund cases within this Circuit and ERISA class litigation in courts across the country. Indeed, "a one-third fee is a common benchmark in private contingency fee cases," and "with high-risk and high-cost cases such as this, contingency fee arrangements are the 'key to the courthouse' for individuals taking on a large corporation." *Tussey I*, 2019 WL 3859763, at *4 (quoting Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Studies 27, 35 (2004)).

District Courts within the Eighth Circuit have regularly awarded attorneys' fees of one-third (or more) of a common fund. *See, e.g.*, *Tussey I*, 2019 WL 3859763, at *4 (33 1/3% fee award); *Dennard*, 2016 WL 6471254, at *1 (33 1/3% fee award); *Krueger*, 2015 WL 4246879, at *1–3 (33 1/3% fee award); *In re E.W. Blanch Holdings, Inc. Securities Litig.*, No. 01-258, 2003 WL 23335319, at *3 (D. Minn. June 16, 2003) (33 1/3% fee award); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997) (33 1/3% fee award); *Carlson*, 2006 WL 2671105, at *8 (35.5% fee award); *In re*

*Iowa Ready-Mix Concrete*, 2011 WL 5547159, at *3 (36.04% fee award); *see also Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (affirming 38% fee award as reasonable); *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (affirming 36% fee award as reasonable).

Likewise, in similar ERISA class actions for fiduciary breach, courts throughout the country have awarded a one-third fee. *See, e.g.*, *In re GE ERISA Litig.*, No. 1:17-cv-12123-IT, Dkt. 385 (D. Mass. Mar. 8, 2024) (awarding class counsel one-third of settlement in attorneys' fees); *Short v. Brown Univ.*, No. 17-cv-00318, Dkt. 55 (D.R.I. Aug. 2, 2019) (same); *Sims v. BB&T Corp.*, Nos. 1:15-CV-732, 1:15-CV-841, 2019 WL 1993519, at *2–3 (M.D.N.C. May 6, 2019) (same); *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *2 (same); *Spano v. Boeing Co.*, No. 06-cv-743, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016) (same); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-701, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (same); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014) (same); *Will v. Gen. Dynamics Corp.*, No. 06-cv-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (same).

### C.    A Lodestar Cross-Check Confirms that a One-Third Fee Is Reasonable

While not required, the Court may perform a lodestar analysis "to double-check the result of the 'percentage of the fund' method." *Petrovic*, 200 F.3d at 1157 (8th Cir. 1999). A lodestar cross-check underscores the reasonableness of Class Counsel's requested fee of $23 million.

Under the lodestar methodology, "the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Keil*

*v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (citation omitted). As of June 5, 2025, Class Counsel has expended approximately 12,802 hours of attorney and staff time prosecuting this matter. Field Decl. ¶¶ 62–63. These hours were spent defeating Defendants' motion to dismiss and motions for summary judgment; obtaining class certification; drafting and responding to written discovery; reviewing and analyzing over 119,000 pages of documents; taking and defending fact and expert depositions; working with expert witnesses to prepare reports and rebuttals; and preparing for and attending multiple mediations, which ultimately resulted in the Settlement Agreement. *Id.* ¶¶ 6–14. A more detailed breakdown of the hours devoted to this matter is provided in the Declaration of Charles Field. *See id*, ¶¶ 62–63.

Courts have recognized that, in light of the complexity of ERISA class actions and the risk that class counsel assumes in a case such as this one, lodestar multipliers are appropriate. *See, e.g., Bekker*, 504 F. Supp. 3d at 271 (approving lodestar multiplier of 5.85 in cross-check of ERISA common fund class action); *In re Colgate-Palmolive*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (holding that a multiplier of five "is on the high end" but "not unreasonable," and observing that in fifty-three ERISA cases cited by plaintiffs, "the implied multiplier ranged from less than one to eight times the lodestar, and nine cases had multipliers greater than four").

Based on the hours recorded and the current hourly rates of Sanford Heisler attorneys and staff working on the case,[4] Class Counsel and Local Counsel's combined lodestar amount to date is $10,676,341.55. *See* Field Decl. ¶ 64 (documenting Class Counsel lodestar of $10,540,828.55); Coler Decl. ¶ 16 (documenting Local Counsel lodestar of $135,513). The fees requested represent a conservative multiplier of 2.15 when

---

[4] Although Class Counsel's hourly rates are not at issue in this case, these rates are also reasonable. Sanford Heisler's hourly rates have been deemed fair, reasonable, and appropriate, and approved by many courts. For reference, equivalent dollar amounts in 2025 dollars are provided in brackets. *See, e.g.*, *In re GE ERISA Litigation*, Case No. 1:17-cv-12123-IT, Dkt. 385 (D. Mass. Mar. 8, 2024) (awarding Sanford Heisler its share of the requested fees of one-third of the settlement amount and stating that the award is fair, reasonable, and appropriate considering the submitted lodestar with hourly rates of up to $1,400 [$1,430.26] for partners, up to $900 [$919.45] for senior litigation counsel, and up to $900 [$919.45] for associates); *Wellens et al. v. Daiichi Sankyo, Inc.*, Case No. 13-cv-00581, Dkt. 191 ¶ 20 (N.D. Cal. Feb. 11, 2016) (approving Sanford Heisler's standard hourly rates of $1,050 [$1,414.16] for partners, $700 [$942.77] for senior litigation counsel, and $575 [$774.42] for associates, as "in line with attorneys of comparable skill, experience, and reputation"); *Ha v. Google Inc.*, No. 116-290847, 2018 WL 1052448, at *2 (Cal. Super. Feb. 7, 2018) (approving award of attorneys' fees to Sanford Heisler and calculating lodestar modifier based on hourly billing rates of $850 [$1,089.28] for partners, $750 [$961.13] for senior litigation counsel, $500 [$640.75] for associates, and $295 [$378.04] for senior legal assistants); *Barrett v. Forest Labs., Inc.*, No. 1:12-cv-05224, Dkt. 292 (S.D.N.Y. June 29, 2018) (approving requested fee award to Sanford Heisler); *id.* at Dkt. 282 (setting forth Sanford Heisler's standard rates used in lodestar cross-check calculation, including hourly rates of up to $1,000 [$1,273.55] for partners, up to $850 [$1,082.51] for senior litigation counsel, up to $550 [$700.45] for associates, and $295 [$375.70] for senior legal assistants); *Chen v. W. Digit. Corp.*, 8:19-cv-00909-JLS-DFM, 2021 WL 9720778, Dkt. 90 at 17 (C.D. Cal. Jan. 5, 2021) ("The Court is familiar with the legal market and is therefore satisfied that [Sanford Heisler's] rates are reasonable."), *approving rates described in Chen v. W. Digit. Corp.*, No. 8:19-cv-00909-JLS-DFM, Dkt. 79-1 at 9–10 ¶ 28 (C.D. Cal. Aug. 28, 2021) (hourly rates of $1,200 [$1,473.15] for partner, $750 [$920.72] for senior litigation counsel, $500 [$613.81] for associate, and $275-$295 [$337.60-$362.15] for legal assistants). Conversions to 2025 dollars were calculated as of February 2025 using the federal government's inflation calculator, available here: https://www.bls.gov/data/inflation_calculator.htm.

compared to Class and Local Counsel's lodestar. In sum, a lodestar cross-check supports the award requested.

## IV.  THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES

Reimbursement of the litigation costs and expenses that Class Counsel advanced in prosecuting this case is also warranted. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Iowa Ready-Mix Concrete*, 2011 WL 5547159, at *4; *see also Zilhaver*, 646 F. Supp. 2d at 1084 ("The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation." (citation omitted)); *Yarrington*, 697 F. Supp. 2d at 1067 ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.").

Reimbursable expenses from a common fund include many litigation expenses beyond the "narrowly defined 'costs' recoverable from an opposing party under Rule 54(d)," including, *inter alia*, "expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research." *Tussey I*, 2019 WL 3859763, at *5; *see also Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 1:15-cv-02062, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and

expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation." (citation omitted)); *In re Iowa Ready-Mix Concrete*, 2011 WL 5547159, at *4 (approving reimbursement for $911,455.92 in litigation expenses that include "expert fees, computerized research fees, document and data management costs, travel and lodging expenses, copying costs, the cost of court reporters and deposition transcripts, and filing fees").

Class and Local Counsel have incurred $735,162.97 in out-of-pocket costs and expenses for necessary expenditures including, *inter alia*, experts, depositions, and data storage and development. *See* Field Decl. ¶ 69 (documenting $733,884.47 in costs and expenses); Coler Decl. ¶ 15 (documenting $1,278.50 in costs and expenses). Counsel's out-of-pocket litigation expenses covered by this request were reasonably incurred and necessary to the prosecution of this case and are therefore properly recoverable under the common fund doctrine. Indeed, working on a contingency basis, Class Counsel had "a strong incentive to keep [] expenses at a reasonable level," and did so here. *Krueger*, 2015 WL 4246879, at *3. A comparison to the amount of costs and expenses that courts have approved in similar cases further demonstrates reasonableness. *See, e.g.*, *Tussey I*, 2019 WL 3859763, at *5 (approving reimbursement of $2,256,805); *Krueger*, 2015 WL 4246879, at *3 (approving reimbursement of $782,209.69); *Hans v. Tharaldson*, No. 3:05-cv-0115, 2013 WL 12253179, at *3 (D.N.D. Feb. 25, 2013); (approving reimbursement of $2,074,726); *In re McLeodUSA Inc. Sec. Litig.*, No. 02-cv-001, 2007 WL 81956, at *4 (N.D. Iowa Jan. 8, 2007) (approving reimbursement of $900,000).

As detailed below, Class counsel also agrees to allocate $25,000 of the reimbursed litigation costs and expenses, to be paid to Class Representative Ms. Snyder.

## V.    THE COURT SHOULD APPROVE A SERVICE AWARD OF $50,000

The Court may, in its discretion, authorize service awards to class representatives for their service to the class. *See, e.g.*, *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) ("Courts routinely recognize and approve incentive awards for class representatives.") (collecting cases). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *see also* 5 Newberg on Class Actions § 17:4 (opining that Rule 23(e) supports such awards, given the heightened risks and burdens of serving as a class representative). Under this well-established approach, an award to the sole Class Representative, Kim Snyder, is appropriate here.

Courts also have a separate and independent ground for granting service awards to plaintiffs who recover funds for an ERISA plan. Because "ERISA typically treats an ERISA Plan as a trust," equity provides another independent basis for the Court to compensate Plaintiff for her service to the Plan. *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011); *see also, Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) ("actions for breach of fiduciary duty" under ERISA § 502(a)(2) are "brought in a representative capacity on behalf of the plan as a whole."); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008) (ERISA describes "the 'plan' as the victim of any fiduciary breach and the recipient of any relief"). "It is a general rule in courts of equity that a trust

fund which has been recovered or preserved through their intervention may be charged with the costs and expenses. . . incurred in that behalf." *United States v. Equitable Tr. Co. of N.Y.*, 283 U.S. 738, 744 (1931) (affirming award of $7,500 to trust beneficiary's representative "for his services," in addition to an award of attorneys' fees and expenses, in suit to restore property to trust).

Moreover, in an effort to balance the strong public policy concerns supporting an appropriate service award with the goal of maximizing recovery to the Plan, Class Counsel requests that the service award be structured such that half ($25,000) is awarded out of Counsel's reimbursed litigation costs and expenses.[5]  Under this approach, of the requested $50,000 award to Ms. Snyder, only $25,000 would be paid from the settlement fund; Class Counsel would allocate the remaining $25,000 of Ms. Snyder's service award out of its reimbursed litigation costs and expenses. While the Court has discretion on the amount and structure of any service award, there is authority supporting payment of a service award out of the total amount awarded to counsel for costs, expenses, and fees. *See, e.g.*, *Schaff v. Chateau Cmty., Inc.*, No. 19-CX-03-6402, 2004 WL 1908209, at *1-2 (Minn. Dist. Ct. May 27, 2004), *aff'd*, No. A04-1246, 2005 WL 1734031 (Minn. Ct. App. July 26, 2005) (approving service awards to be "paid separately as a litigation cost"); *In re Cendant Corp., Derivative Action Litigation*, 232 F. Supp. 2d 327 (D.N.J. 2002) (approving service award for plaintiff to be paid out of total award for attorney expenses and fees); *In re Dell*

---

[5] In short, of the $735,162.97 requested as reimbursement for litigation expenses, $25,000 would be allocated to Plaintiff's service award, with $710,162.97 paid to Plaintiff's Counsel.

*Technologies Inc. Class v. Stockholders Litig.*, 300 A.3d 679 (Del. Ch. 2023), *as revised*,

(Aug. 21, 2023) (approving service award for plaintiff to be paid out of amount awarded

to counsel); *Rollins v. Dignity Health*, No. 13-CV-01450-JST, 2022 WL 20184568, at *4

(N.D. Cal. July 15, 2022) (court approved service awards to come out of the "attorney's

fees, expenses, and awards" instead of common settlement fund). [6]

### A.    Legal Standard

In deciding whether to grant a service award to a Class Representative, courts

consider the actions the plaintiff took to protect the interests of the class, the degree to

which the class has benefitted from those actions, and the amount of time and effort the

plaintiff expended in pursuing the litigation. *In re U.S. Bancorp Litig.*, 291 F.3d at 1038.

Courts also heavily weigh the risks plaintiffs took in lending their names to the lawsuit.

"[U]nlike in consumer and most other class actions, each Plaintiff was willing to alienate

their employer, longtime friends loyal to [UnitedHealth] and current and future employers

unlikely to embrace an employee who files an action against his employer." *Abbott*, 2015

WL 4398475, at *4; *see also Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018

WL 2966956, at *2 (N.D. Ill. June 12, 2016) (opining that service awards are especially

"well suited in employment litigation" given the risks the named plaintiffs bear in suing

their employer); *see also Beesley*, 2014 WL 375432, at *4 ("ERISA litigation against an

---

[6] *Contra In re UnumProvident Corp. Derivative Litig.*, No. 1:02-CV-386, 2010 WL 289179, at *8–9 (E.D. Tenn. Jan. 20, 2010) (declining to fund service award out of attorneys' fee award); *In re Anthem, Inc. Data Breach Litigation*, 2018 WL 3960068, *32 (N.D. Cal. 2018) (rejecting special master's recommendation that service awards be paid out of attorneys' fee award).

employee's current or former employer carries unique risks," including "alienation from employers or peers"); *see also Zilhaver*, 646 F. Supp. 2d at 1085 ("Zilhaver and Linn were 'the only Plan participants to step forward and commence or intervene in this suit.'. . . As named plaintiffs, they bore the risks of counterclaim or collateral attack, and consulted with class counsel throughout the suit."); *see also Cook*, 142 F.3d at 1016 (recognizing the fear of "workplace retaliation" in bringing an ERISA action).

These considerations support a service award in the requested amount of $50,000 for Plaintiff Kim Snyder as sole Class Representative.

### B.    Plaintiff Provided Substantial Services to the Class Members and the Plan

Plaintiff, Kim Snyder, was a participant in the Plan who invested in the Wells Fargo Target 2035 Fund during the Class Period. Ms. Snyder took a leading, decided, and earnest part in representing the Class and advancing the case to this settlement stage. As the sole representative of the Plan and of the Class, Ms. Snyder personally took on the reputational risk of failing.

Ms. Snyder has been involved throughout the litigation and has contributed to the investigation, discovery, and settlement of the Class claims. Ms. Snyder dedicated considerable time and energy to the case and to promoting the interests of the Class, including by being deposed. She also bore the particular burden of being the only Class Representative in this action. *See* Declaration of Kim Snyder, Dkt. 234-3 ("Snyder Decl."). Ms. Snyder put her name in the public arena as the sole Class Representative, risking her reputation and future career prospects for the benefit of the Class.

Ms. Snyder has dedicated over 340 hours to the case over the four years of litigation, performing actions that benefited the Class at large, including: furnishing her 401(k) account statements and key Plan documents to Class Counsel, such as the Plan's Summary Plan Description and Fee Disclosure Notice; providing explanations to Class Counsel about the Plan's investment options; contributing to and diligently reviewing all the court filings, including the initial and amended complaints for factual accuracy; reviewing memoranda, exhibits, and court orders related to Defendants' Motion to Dismiss and Motions for Summary Judgment; providing written interrogatory responses and assisting Class Counsel with the review of discovery requests; preparing and sitting for a deposition; reviewing the 187-page transcript of her deposition for accuracy and assisting with the preparation of errata; assisting Class Counsel in preparing for two all-day mediations and one mandatory settlement conference and making herself available during these proceedings; participating in numerous phone calls with Class Counsel regarding case developments and settlement discussions; and reviewing the Settlement Agreement and Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement. *Id.* ¶¶ 7–10.

Plaintiff understands her responsibilities as the representative of Class Members and has been in regular contact with Class Counsel to monitor the Class Action and provide important input and advice, including in settlement negotiations. *Id*. ¶¶ 9, 12.

Ms. Snyder's commitment to this case was the means of obtaining an outstanding outcome for the Plan and the Class: the largest settlement of its kind in an ERISA context. The requested service award of $50,000, amounting to 0.072% of the Settlement Fund, is

fair, reasonable, and appropriate considering the time and effort that Plaintiff has dedicated to prosecuting this Action on behalf of the Class and Plan, and the particular risks undertaken by Plaintiff as the sole representative of the Class and Plan.

### C.    The Requested Service Award Is Comparable to Those in Other Class Actions

Courts have recognized that "ERISA litigation against an employee's current or former employer carries unique risks, including alienation from employers or peers." *Krueger*, 2015 WL 4246879, at *3. Under similar circumstances, courts within this Circuit have authorized comparable or higher total service award payments from the common fund. *See, e.g.*, *Tussey I*, 2019 WL 3859763, at *6 (awarding a total of $75,000 in service awards for three class representatives); *Krueger*, 2015 WL 4246879, at *3 (awarding a total of $125,000 in service awards for five class representatives); *Kruger v. Lely N. Am., Inc.*, No. 020-CV-00629-KMM/DTS, 2023 WL 5665215, at *6 (D. Minn. Sept. 1, 2023) (awarding a total of $120,000 in service awards to class representative group, including an individual service award of $50,000, out of $64 million settlement).

Public policy strongly supports service awards as recognition for a plaintiff's important service of participating in the suit and promoting class action settlements. Such awards compensate a plaintiff for the efforts and risks she has undertaken, without which there would be no recovery for the Class. *See Tussey III*, 850 F.3d at 962 (8th Cir. 2017); *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (citing *Cook*, 142 F.3d at 1016 (7th Cir. 1998)); *Bell*, 2019 WL 4193376, at *6 (noting that "[w]ithout [plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible"). Further,

they provide an incentive for other employees to bring successful cases that vindicate the public's interest in having retirement savings prudently and loyally managed, even though it requires assuming particular professional and reputational risks. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (noting that service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action . . .").

Furthermore, the Settlement Notice advised Class Members that Plaintiff would seek up to $100,000—twice the amount now sought—to be paid in whole from the settlement fund as a service award for bringing this action and serving as Class Representative. To date, no Class Member has voiced any objection to this proposed maximum award, which is considerably higher than the award now requested. *See* Field Decl. ¶16.

## VI.    CONCLUSION

For the above reasons, Plaintiff requests that the Court grant this Motion and award $23 million in attorneys' fees, expenses in the amount of $735,162.97, and a $50,000 service award for Kim Snyder.

Dated: June 5, 2025

/s/ *Charles H. Field*
Charles H. Field, CA Bar No. 189817*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
7911 Herschel Avenue, Suite 300
La Jolla, CA  92037
Telephone: (619) 577-4252
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

Leigh Anne St. Charles, TN Bar No. 36945*
Kevin H. Sharp, TN Bar No. 16287*
Brent Hannafan, TN Bar No. 25209*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Phone: (615) 434-7000
Facsimile: (615) 434-7020
lstcharles@sanfordheisler.com
ksharp@sanfordheisler.com
bhannafan@sanfordheisler.com

David Sanford, NY Bar No. 5695671*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
17 State Street, Suite 3700
New York, NY 10004
Phone: (646) 402-5656
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com

Susan M. Coler, MN Bar No. 0217621
**HALUNEN LAW**
1650 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
coler@halunenlaw.com

*Attorneys for Plaintiff and the Class*

* Admitted *pro hac vice*